## Russell, Burdsall & Ward (incorporated) v. Excelsior Stove & Manufacturing Company.

1. CONTRACT—*when abandoned.* A contract is deemed to have been abandoned by a party where his letters indicate a clear purpose not to abide by its terms and likewise a positive and unequivocal refusal to comply therewith.

2. CONTRACT—*what not duty of party to, where the other party has abandoned.* Where one party to a contract has abandoned the same, it is not essential that the other, in order to recover for a breach, continue to perform useless acts with a view to keeping it alive.

3. CONTRACT—*when party in default cannot maintain action for breach of.* Where a vendee has accepted goods delivered under an express contract, but not at the time or in the quantity required of it with knowledge of the default of the vendor in these respects, and he has himself failed, without showing legal excuse, to pay for them according to the contract, or a readiness and willingness so to do, he cannot maintain an action on the contract for the default of the vendor.

4. CONTRACT—*meaning of "requirements" as used in.* Where a party agrees to purchase his "requirements" he thereby contracts to purchase what he shall need in the regular course of his business and not merely what he may choose to order.

5. SET-OFF—*proof essential to establish.* Under a plea of set-off, it is essential that the defendant shall prove the same facts that he would be required to prove if he had brought an original action upon his demand.

6. DAMAGES—*when, accruing after commencement of action may be recovered.* Where a contract has expired, all damages for its breach accruing up to the time of the trial may be recovered.

7. SECONDARY EVIDENCE—*what is.* Notwithstanding a witness may make a pretense of testifying from an independent recollection, yet where it clearly appears that his evidence was based upon a reading of written instruments, the evidence is secondary and incompetent.

Action of assumpsit. Appeal from the Circuit Court of Adams County; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this

24     Appellate Courts of Illinois.

Vol. 120.] Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.

court at the November term, 1904. Reversed and remanded. Opinion filed April 20, 1905.

Fassett & Andrews and M. F. Carrott, for appellant.

H. M. Swope and Vandeventer & Woods, for appellee.

Mr. Presiding Justice Baume delivered the opinion of the court.

This is a suit in assumpsit by appellant against appellee, to recover $1,014, the price of stove bolts sold and delivered in pursuance of a written contract, embodied in the following:

> "Quincy, Ill., December 14, 1898.
> Russell, Burdsall & Ward, Port Chester, N. Y.
>
> Gentlemen: Enter our order for our requirements in stove bolts from date to Jan. 1, 1901, not to exceed ten million bolts at a discount of 80–10–2–½ for bulk. Delivered f. o. b. cars Quincy, terms 60 days 2 off 10 days. Price guaranteed against decline and quality guaranteed equal to any stove bolt on the market.
>> Yours truly,
>>> Excelsior Stove & Mfg. Co.,
>>>> John J. Fisher, Pres. & Treas.
> Accepted, Russell, Burdsall & Ward,
>> Per F. A. Mann, Mgr.,
>>> 811 N. Y. Life Bldg., Chicago. "

> "Port Chester, N. Y., Dec. 14, 1898.
> Excelsior Stove & Manf'g Co., Quincy, Ill.
>
> Gentlemen: We are disposed at all times to meet honest competition and will therefore modify your contract under even date so far as price, and make same read 80–10 –2–½ for bulk and 12½ per cent. Trusting this will be satisfactory and that you will favor us with your business, we are,
>> Yours truly,
>>> Russell, Burdsall & Ward,
>>>> Per F. A. Mann, Mgr."

To the declaration, consisting of the common counts, appellee pleaded the general issue and two special pleas of set-off. The pleas of set-off allege, that on or about September 13, 1899, appellant refused to deliver any more

Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.

stove bolts under the contract; that appellee was thereby compelled to go into the market and purchase stove bolts at an advanced price to supply the requirements of its business, and that by reason of appellant's refusal to deliver the bolts as ordered, appellee was damaged to the amount of $1,419.46. By agreement, a jury was waived and the case tried by the court. The finding and judgment was in favor of appellee, on its pleas of set-off, for $403.59.

It was stipulated upon the trial, that on different dates during the year 1899, appellant sold to appellee certain lots or quantities of stove bolts upon orders given by appellee; that said stove bolts were afterwards, at different times, shipped and delivered by appellant to appellee; that payment for each of said shipments of bolts was due sixty days after the respective dates of said shipments, and that the dates upon which said shipments of stove bolts were made to said appellee, and the amounts or money values of the same according to the agreed prices therefor, were, respectively, as follows:

| | | |
|---|---:|---:|
| "Nov. 2, 1899...............................$ | 234 | 54 |
| Nov. 2, 1899................................... | 85 | 90 |
| Dec. 9, 1899 ................................. | 218 | 05 |
| Dec. 19, 1899 ................................ | 65 | 20 |
| Jan. 17, 1900 ................................ | 106 | 97 |
| Feb. 23, 1900 ................................ | 39 | 04 |
| March 3, 1900 ............................... | 266 | 30 |
| | | |
| Total | $1,014 | 00." |

No part of this amount was paid by appellee, at the time this suit was instituted.

It does not appear from the record, how soon after the making of the contract appellee ordered bolts shipped in pursuance of its terms, but the evidence shows that beginning March 5, 1899, appellee, at frequent intervals, ordered shipment of bolts and that such orders were received and acknowledged by appellant. That from that time until the last shipment made March 3, 1900, in fulfillment of orders given prior to September 20, 1899, appellee was

26 APPELLATE COURTS OF ILLINOIS.

VOL. 120.] Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.

continually urging appellant to fill more promptly the orders theretofore given, and appellant was as continually promising speedy shipment and excusing the delay in shipment because of the unprecedented volume of business and its inability to obtain the raw material for the manufacture of bolts. It is conceded that about six months after the contract went into effect there was a very considerable advance in the price of bolts and that such advance in price continued during the life of the contract. In September and October, 1899, there was correspondence between appellant and appellee, as follows:

"CHICAGO, ILL., Sept. 13, 1899.
THE EXCELSIOR STOVE MFG. CO., Quincy, Ill.

GENTLEMEN: For the first six months on your contract this year you ordered 159,000 stove bolts. In August you ordered 400,000, and I see that already in September you have ordered 535,000 more.

This looks very much as though you were stocking up for a long future business at our expense, and as it is near the end of your business year, you certainly cannot use them during the life of our contract.

We would like to receive an explanation from you.
Respectfully yours,
RUSSELL, BURDSALL & WARD,
F. A. MANN, Mgr."

"SEPT. 14, 1899.
MR. F. A. MANN,
811 N. Y. Life Bldg., Chicago, Ill.

DEAR SIR: We are much surprised at contents in yours under date of September 13. We have at no time endeavored to stock up on stove bolts at your expense, all we request of you is that you live up to the contract entered into with you under date of Dec. 14, 1898, which contract you no doubt have a copy.
Yours truly,
EXCELSIOR STOVE & MFG. CO."

"CHICAGO, ILL., Sept. 20, 1899.
THE EXCELSIOR STOVE MFG. CO., Quincy, Ill.

GENTLEMEN: Referring to my letter to you of the 13th, you will notice that during the first six months of this year you bought only 159,000 stove bolts of us. During that six months you should have bought the larger share of the

amount that you would naturally take on contract for this season, and the fact that you ordered 400,000 in August, and 685,000 in September, shows conclusively that you are trying to take advantage of us on our contract, as your season for buying material for manufacture during the present season has already passed.

Please remember that we are doing business with other concerns in your line, who are not trying to take advantage of us, and we can judge from their orders what your wants should be.

We shall, therefore, decline to accept any more orders from you on our contract, and feel that we are giving you already, if we fill orders already sent us, much more than you are entitled to.

Respectfully yours,

RUSSELL, BURDSALL & WARD,

F. A. MANN, Mgr."

"OCTOBER 7, 1899.

MR. F. A. MANN, Mgr. Russell, Burdsall & Ward,

811 New York Life Bldg., Chicago, Ill.

DEAR SIR: Replying to your valued favor under recent date, we again refer you to our letter sent you Sept. 13, wherein we stated plainly that we were not stocking up on stove bolts at your expense.

We fully expect to use every bolt ordered from you long before your contract expires, and shall look to you to fill our further specifications should our requirements demand it.

Yours truly,

EXCELSIOR STOVE & MFG. CO."

November 7th, appellee wrote appellant:

"We have been buying above sizes of stove bolts from our neighbors for the past two weeks and shall charge your account with the difference in contract price and price which we are compelled to pay for them. We trust you will see necessity of making us shipment of our complete order without further delay."

Again, on the same day:

"As stated in our prior letter, we are daily buying a number of bolts in small lots to tide us over until those ordered from you arrive. We shall of course expect you to reimburse us for the difference paid by us and the contract price."

November 23d, appellant wrote appellee as follows:

28      APPELLATE COURTS OF ILLINOIS.

VOL. 120.] Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.

"We have yours making claim on us for a total of $30.45 for difference in bolts and expressage on same, which you have bought while awaiting bolts from us, which we cannot see the justice of, as there is nothing in our contract with you compelling us to furnish at stated periods.

In all of our large lists of contracts and customers this is the first time we have ever been called upon to reimburse any party for delay in filling orders and this year you very well know that every party manufacturing goods from iron and steel are pushed to their utmost to even partially supply consumers.

We have contracts with Rolling Mills and Wire Mills who have not kept us supplied although we have sent representatives to the Mill to hurry the orders, and certainly we do not consider that we have any money claim on them. We have written our Mr. Mann to call on you when in your vicinity and if you have any just claim he will certainly adjust the same."

December 4th, appellee wrote appellant:

"We are buying daily and charging your account with the difference in prices."

And December 13th:

"As stated in our prior letter we are daily buying these goods from our neighbors and fully expect you to reimburse us for the difference in our cost and the contract price."

February 13, 1900, appellant wrote appellee, as follows:

"We have your memorandum of charge of $72.15 which you claim as difference that you think we should stand. We notice that you have made the charges at the net price of 62½% off, when they should have been at least 62½, 10 & 5% which would net as follows:

$122.74, less 10 & 5% ....................$104.94
Less at our discount.....................   50.59
                                          _____
                                          $ 54.35

We certainly cannot see how you can claim any more than the above. We are not willing to concede any more than this and under the circumstances think you will agree with us."

In response to an order by appellee dated February 17th, for 152,000 bolts, appellants on February 19th, wrote as follows:

"We are just in receipt of your stove bolt order, which will be acknowledged by our Supt., naming time when it can be shipped. This order will be filled at present stove bolt prices, 60, 10, 5 % in papers, 2½ % allowed in bulk keg lots. If you order a million bolts within the year you are entitled to a rebate of 7½ %; or if your purchases do not reach one million, but are over 500,000, you are entitled to a rebate of 5 % instead of 7½ %."

To this letter, appellee on February 23d, replied thus:

"We note what you state on yours under date of Feb. 19th, and beg to refer you to our contract under date of Dec. 14, '98, and shall expect you to live up to this contract. Kindly advise us by return mail whether or not we understand correctly, that you refuse to fill our order at contract price; we must have immediate shipment of the bolts ordered from you."

And appellant rejoined February 28th, by saying:

"In reply to yours of the 23rd, will say if you will refer to your contract you will see that same expired Jan. 1, 1900. We expect to fill all orders received from you prior to that date at prices as per contract. Any orders received since Jan. 1st, we will be pleased to fill at prices ruling at the time order is received. Do you wish us to so enter your order?"

March 1st, appellee ordered, for immediate shipment, eighteen kegs of stove bolts, and thereupon the following correspondence was had:

"PORT CHESTER, N. Y., Mar. 6, 1900.
EXCELSIOR STOVE & MFG. CO., Quincy, Ill.

GENTLEMEN: We have yours of the 1st ordering 18 kegs of stove bolts, which we will enter at present list and discount, 60, 10% 2½% off 60 days or 2% cash 10 days. Is this as you understand it?
Yours truly,
RUSSELL, BURDSALL & WARD,
Per Jos. H. MARSHALL."

"QUINCY, ILL., March 16, 1900.
RUSSELL, BURDSALL & WARD, Port Chester, N. Y.

GENTLEMEN: Replying to your valued favor under recent date will state that order sent you recently for eighteen kegs stove bolts is to apply on our contract under date of Dec. 14, 1898, which does not expire for some time.
Yours truly,
EXCELSIOR STOVE & MFG. CO.,
JOHN J. FISHER, Pres. & Treas."

30　　　Appellate Courts of Illinois.

Vol. 120.] Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.

"Port Chester, N. Y., March 19, 1900.
Excelsior Stove & Mfg. Co., Quincy, Ill.

Gentlemen: We are in receipt of yours of the 16th, and in reply will say that our contract with you dated Dec. 14, 1898, reads: 'Enter our order for our requirements in stove bolts from date to January 1, 1900.' You will therefore see your contract has expired and we cannot accept your orders received since Jan. 1st to apply on this contract, and we will await your reply whether we shall enter them as your quotation of recent date.

Yours truly,

RUSSELL, BURDSALL & WARD.
H. E. MARSHALL, Asst. Treas."

It is evident that appellant, through inadvertence or otherwise, misquoted that portion of the contract relating to the time of its expiration.

Appellant contends that the letters written by it to the appellee must be construed as a mere declaration of an intention to abandon the contract and did not constitute a breach of the contract; that appellee did not, in fact, accept or act upon appellant's letters as a breach of the contract; and that it was incumbent upon appellee to send orders for bolts to appellant, to be shipped under the contract, before purchasing the same elsewhere. The letters of appellant did not constitute a breach of the contract in the sense that it was abrogated, because the concurrence of appellee would be necessary to effect that result, but we are clearly of opinion that the letters quoted, taken together, from September 13, 1899, to March 19, 1900, evidenced not only a clear purpose on the part of appellant not to abide by the terms of the contract, but also a positive, unequivocal refusal to comply with its terms. In Roebling's Sons' Co. v. Lock Stitch Fence Co., 130 Ill. 660, it is said: "Where one party to a contract gives notice before the time of performance arrives that he does not intend to perform, the other party may treat such notice as a breach, and bring his action, or he may decline to accept such notice as a breach and may insist that the contract shall continue in force up to the time fixed for its final performance, holding the party refusing to perform responsible for the

consequences of such refusal. One party to a contract cannot, by simply refusing to carry out his part of it, compel the other party to rescind it. The latter has a right to keep it alive notwithstanding such refusal." By its letter of February 23d, in which it said " We note what you state in yours of Feb. 19th, and beg to refer you to our contract under date of Dec. 14, 1898, and shall expect you to live up to this contract," appellee clearly elected to disregard appellant's refusal to perform, and to keep the contract alive for its (appellee's) benefit. Nor do we think that appellee, after the action of appellant in twice refusing to fill orders under the contract, was required to keep up the needless formality of ordering bolts necessary in its business.

It is urged by appellant that appellee must show, as a condition precedent to a recovery under its pleas of set-off, that it was not in default itself in the performance of the contract; that appellee being in default in its payment for bolts shipped November 2, 1899, payment for which by the terms of the contract, was due sixty days thereafter, or January 1, 1900, could not legally demand that more bolts be shipped to it under the contract, or ask for damages because the same were not shipped. Undoubtedly the rule is, that a defendant pleading a set-off assumes the position of a plaintiff, and in order to recover, is required to prove the same facts he would be bound to prove if he had brought an original action on his demand. Ellis v. Cothran, 117 Ill. 458.

It is also a general rule applicable to cases of this character, that a vendee who has accepted goods delivered under an express contract, but not at the time or in the quantity required by it, with knowledge of the default of the vendor in those respects, and who has himself failed, without showing a legal excuse, to pay for them according to the contract, or a readiness and willingness so to do, cannot maintain an action on the contract for the default of the vendor. Hess Co. v. Dawson, 149 Ill. 138; Harber Bros. Co. v. Moffat Cycle Co., 151 Ill. 84; Purcell Co. v. Sage, 200

32 APPELLATE COURTS OF ILLINOIS.

VOL. 120.] Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.

Ill. 342. An examination of the cases cited, and in which, upon an application of the rule, a recovery was denied, will disclose a state of facts very different from those in this case. In the case at bar, appellee repeatedly informed appellant, that owing to the delay in the shipments of bolts ordered, it was obliged to go into the market and purchase bolts required in its business, at prices in excess of the contract price, and had charged appellant with the difference. November 23, 1899, appellant wrote appellee that any just claim in that regard would be adjusted, and on February 19th, following, appellant substantially conceded its liability for a portion of a claim made by appellee. Upon this state of the account, and in the absence of any demand by appellant for payment or settlement, we are not disposed to hold that appellee was in such default as to preclude a recovery of damage.

This suit was commenced by appellant July 2, 1900, and appellee's pleas of set-off were filed, respectively, May 27, 1902, and March 28, 1904. The case was tried April 22, 1904. Upon the trial, the court permitted appellee, under its pleas of set-off, to introduce evidence of the purchase of bolts from other parties up to January 1, 1901, and allowed appellee damages for the amount it was required to pay for bolts so purchased, in excess of the contract price. This action of the court is assigned as error, and it is insisted, that, in any event, appellee could only introduce evidence of such purchases of bolts and recover damages under its pleas of set-off, up to the commencement of the suit, July 2, 1900. Appellee's pleas of set-off, which stand for its declaration, were filed after the contract had expired by its terms and the trial was also had after that time, and upon the authority of Mount Hope Cemetery Ass'n v. Weidenmann, 139 Ill. 67, the action of the court was proper. See also, Hercules Coal & Mining Co. v. Central Investment Co., 98 Ill. App. 427.

The judgment in this case must be reversed and the cause remanded, because the only evidence offered by appellee of the quantity and prices of bolts purchased by it from

Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.

parties other than appellant, and upon which purchases appellee's claim for damages is based, consisted of invoices received by appellee from the various sellers. True, the witness Fisher made a pretense of having an independent recollection of the different transactions involving purchases of bolts, but an examination of the record makes it clear that his claim in that regard was mere pretense and that his testimony was based entirely upon a reading of the invoices and not upon his personal knowledge or recollection of the transactions. The transaction in question involved fifty or more separate invoices of bolts, purporting to show sales to appellee, from October 26, 1899, to December 23, 1900, the invoices in many instances containing several different items ranging in amount from a few cents to several hundred dollars, and it is incredible that the witness could have testified of his personal knowledge with respect to the same.

The objections interposed by counsel for appellant, to the manner in which the sales in question was sought to be shown, should have been sustained, and appellee required to make competent primary proof upon that subject.

The contract in question is for appellee's "requirements" in stove bolts from December 14, 1898, to January 1, 1901, and this means such amount of stove bolts as appellee should need in the regular course of its business and not what appellee might choose to require from appellant. Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85. Upon another trial, appellee should make more definite proof that the bolts purchased by it were within its requirements, as here construed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*