STERLING COAL CO. v. SILVER SPRING BLEACHING & DYEING CO.

(Circuit Court of Appeals, First Circuit. July 2, 1908.)

No. 763.

1. SALES—CONTRACT—CONSTRUCTION—OPTION.

Where an instrument purported to embody an agreement that plaintiff was to furnish defendant with its entire consumption of coal, and also contained an absolute requirement that plaintiff should have 1,000 tons constantly in defendant's yard, and 3,000 tons on dock, and in transit to insure a continuous supply, the instrument fairly imported an agreement on defendant's part to accept the coal, as well as an obligation of plaintiff to deliver the same, and was therefore an enforceable bilateral contract.

2. SAME—ACTION FOR PRICE—RECOUPMENT.

Where plaintiff contracted to furnish defendant with its entire consumption of coal from May 1, 1902, to April 1, 1903, at certain specified prices, and neither party ever repudiated the contract because defendant was not bound to consume coal, such fact, if true, was no bar to defendant's right to recoup from the price of coal furnished any damages that it suffered in consequence of plaintiff's failure to furnish a sufficient supply.

3. SAME—CONTRACT—CONSTRUCTION—PLACE OF DELIVERY—"F. O. B. PHILADELPHIA."

A contract required plaintiff to furnish defendant with its entire consumption of coal between specified dates at $2.40 per long ton f. o. b. Philadelphia; the Eastern Coal Company, or any other mutually satisfactory concern, to freight, insure, unload, and haul to defendant's works for $1.35 per long ton, defendant's total payment to both parties being $3.75 per long ton delivered in defendant's yard at such times and in such quantities as defendant might direct, and plaintiff to have at least 1,000 tons constantly in defendant's yard and 3,000 tons on dock at Providence and in transit. *Held*, that the contract required delivery of the coal at defendant's yard; the words "f. o. b. Philadelphia" being used merely to fix the price up to that point.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 214.]

**4. SAME—GUARANTY OF DELIVERY—WAIVER.**

That defendant contracted with the Eastern Coal Company to freight, insure, unload, store, and haul the coal did not operate as a waiver by defendant of plaintiff's guaranty to keep a sufficient supply of coal on hand in defendant's yard.

**5. SAME—WAIVER OF DEFAULT—SUBSEQUENT ACCEPTANCE.**

Where plaintiff contracted to furnish defendant with its supply of coal during a certain period, defendant's acceptance of coal under the contract at a later time, after it had been damaged by plaintiff's failure to furnish coal as agreed, did not waive or extinguish defendant's cause of action already accrued.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 458.]

In Error to the Circuit Court of the United States for the District of Rhode Island.

Harry J. Jaquith and Walter H. Barney (Barney & Lee, on the brief), for plaintiff in error.

Seeber Edwards (Frank H. Swan and Edwards & Angell, on the brief), for defendant in error.

Before HOLMES, Circuit Justice, and COLT and PUTNAM, Circuit Judges.

HOLMES, Circuit Justice. This is an action of assumpsit brought by the plaintiff in error, hereafter called the plaintiff, for the price of coal sold and delivered to the defendant. The defendant does not dispute the debt, but sets up a claim in recoupment based upon an instrument which it says was the contract under which the coal was delivered. That instrument was as follows:

April 14, 1902.

Messrs. Sterling Coal Co.,
    John C. Bradley, Vice-President,
        Philadelphia, Pa.

Gentlemen: In accordance with agreement made last week between your Vice-President, Mr. John C. Bradley, and our Agent, Mr. James L. Crowell, you are to furnish us with our entire consumption of coal from May 1st, 1902, to April 1st, 1903, quality to be the same as has been furnished previously by you, price to be two dollars and forty cents ($2.40) per ton of 2,240 lbs., f. o. b. Philadelphia. The Eastern Coal Co., or any other mutually satisfactory concern, is to freight, insure, unload, store, and haul to our Works for the sum of one dollar and thirty-five cents ($1.35) per ton of 2,240 lbs. Our total payments to both parties to be $3.75 per ton of 2,240 lbs. delivered in our yard, said coal to be delivered at such times and in such quantities as we may direct. Payment for coal to be as heretofore. You agree to have at least one thousand tons of coal constantly in our yard, which amount is not to be stored during continuance of contract without being drawn from, but we are to be using from one part of the surplus as you are delivering in some other part. It is, however, at your risk and is not to be paid for until expiration of contract. You to have on dock at Providence, and in transit thereto, at least three thousand tons more, to make sure that we shall have sufficient supply of coal in case anything unusual should happen. In other words, you are to become responsible to us to the extent of four thousand tons of coal as a reserve supply to draw from.

    Yours very truly,               Silver Spring B. & D. Co.,
                              Charles Warren Lippitt, Treasurer.

P. S. The above statement of our contract with the Silver Spring B. & D. Co. is correct, and is approved and accepted of by us.

                              Sterling Coal Company,
                                By John C. Bradley, V. P.

The case was tried by a judge without a jury, and he found that the foregoing instrument was the contract, and that the plaintiff did not deliver the "coal to the defendant at defendant's yard, or otherwise, at such times and in such quantities as the defendant directed, or in such manner as to have at least one thousand tons of coal constantly in said yard; and did not deliver coal in such quantities and at such times as to supply the defendant with coal necessary for its consumption when it was needed by the defendant for consumption." He also found that, in consequence of the plaintiff's failure to keep the defendant supplied according to contract, and in order to procure coal actually necessary for its consumption, the defendant bought 2138 tons of coal from the Eastern Coal Company and other parties, and was obliged to pay $10,281.20 in excess of the agreed price as a consequence. He found that the defendant bought only upon necessity, at the best rates obtainable, and acted in all respects in good faith, and was entitled to the above sum. The main question turns on the effect and construction of the document which we have recited, but it is proper to explain that the Eastern Coal Company was also a purchaser or received coal for other purchasers, that the coal was shipped to it in bulk, and that the trouble arose at the time of the great coal strike in 1902, because the Eastern Coal Company did not allot, or turn over when allotted, enough of the coal sent by the plaintiff to answer the defendant's needs. According to its view, it did not receive enough to satisfy what it regarded as demands of equal rank; but our opinion concerning the instrument makes it unnecessary to consider what were the special causes of the failure to deliver, or to apportion the blame.

It is said in the first place that the instrument was not a contract, but merely an offer—a unilateral undertaking by the plaintiff, the Sterling Coal Company, without consideration. The ground of the argument is that the defendant did not undertake to buy its consumption of coal from the plaintiff, but that the plaintiff simply promised to sell at the rates mentioned, if required. We do not so construe the paper. It purports to embody an "agreement" that the plaintiff is to "furnish" the defendant with its entire consumption of coal. This fairly imports that the defendant agrees to accept, as well as the plaintiff to deliver, and that meaning is confirmed by the absolute requirement that the plaintiff should have 1000 tons constantly in the defendant's yard, and the further provision as to the 3000 tons. The contract actually was signed about May 15, and at that time was in operation by its terms.

The only argument on the foregoing point that seems to us to have any weight is not that the defendant did not promise to buy its consumption from the plaintiff, but that it did not promise to consume, that theoretically it might stop operations, that therefore the incurring of any debt rested in its choice, and that an agreement cannot amount to a contract enforceable by law when one party retains the power to say whether he will be bound or not. Dennis v. Slyfield, 117 Fed. 474, 54 C. C. A. 520.

Whether such a purely theoretical freedom existed, and whether, if it existed, it could have been set against the practical necessity of

going on, if the plaintiff had seen fit to repudiate the agreement at the outset, we need not decide. The plaintiff did not repudiate it, the defendant went on consuming coal and calling on the plaintiff to furnish it, and whatever may have been the original weakness of the paper, if any, there can be no doubt that it attached to the consumption that took place, and the demands that were made. As the coal that was furnished was furnished under this contract, nothing more needs be said to show that the defendant is entitled to recoup from the price due any damages that it may have suffered in consequence of the plaintiff's breach, if that is made out. American Cotton Oil Co. v. Kirk, 68 Fed. 791, 794, 15 C. C. A. 540; Crane v. Crane, 105 Fed. 869, 871, 45 C. C. A. 96; Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 57 L. R. A. 696; Loudenback Fertilizer Co. v. Tennessee Phosphate Co., 121 Fed. 298, 300, 58 C. C. A. 220, 61 L. R. A. 402; Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Hickey v. O'Brien, 123 Mich. 611, 82 N. W. 241, 49 L. R. A. 594, 81 Am. St. Rep. 227; Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529.

But it is said that if there was a contract, it only bound the plaintiff to deliver in Philadelphia. On that construction it is contended that the plaintiff performed its undertaking, or, if it failed, failed only through the default of the Eastern Coal Company, for which the plaintiff contends that it was not responsible. In aid of this construction the plaintiff showed, indeed the defendant in its notice of recoupment admitted, that the Eastern Coal Company contracted with the defendant, not with the plaintiff, to freight, insure, discharge, store, weigh and haul the coal to be delivered by the plaintiff to the defendant, with further details. We agree with the Circuit Judge, that these facts cannot affect the construction of the contract before us, especially as we think it perfectly clear on its face. It seems to have been signed after the contract with the Eastern Coal Company was made, and the latter seems to have been suggested and shaped for the defendant by the plaintiff, so that the plaintiff knew that it was reasonably safe in signing. But, safe or not, the plaintiff must stand to the guaranty it gave. The reason for the defendant rather than the plaintiff being the party to the agreement of the Eastern Coal Company may have been, in part, as the plaintiff suggests, that, the Eastern Coal Company being also a purchaser, the arrangement enabled the defendant to buy at carload prices and yet to take the coal in less quantities, as wanted. At all events it was a mutually satisfactory way of securing the transportation at the contract rate, a rate which, directly or indirectly, the defendant would have to pay.

The plaintiff relies on the words "f. o. b. Philadelphia." But those words are used merely to fix the price up to that point, as the contract goes on to establish the further sum to be paid to get the coal to the defendant's works. Nothing can make it plainer than it is made by the language used, that the words "Our total payments to both parties to be $3.75 per ton of 2240 lbs. delivered in our yard" are a stipulation by the defendant in its own favor, to which the plaintiff agrees, like the rest of the phrase, "said coal to be delivered at such times and

in such quantities as we may direct." In short, plaintiff guarantees delivery at the defendant's yard, at a price made up of two elements but both of them fixed at the plaintiff's risk. The rest of the document confirms what already is free from doubt. "You agree to have at least one thousand tons of coal constantly in our yard" explicitly makes the plaintiff responsible for delivery there. And again, "You to have on dock at Providence," etc. We deem further discussion unnecessary and with our decision upon this point a great part of the plaintiff's argument falls. It is immaterial whether the Eastern Coal Company was the agent of the plaintiff, as found by the Circuit Judge, or what contract the defendant had made with it. The plaintiff contracted to deliver at the defendant's yard, and as it failed to do so it must pay.

Some subordinate questions were argued, but they need little mention. It is said that making a contract with the Eastern Coal Company was a waiver by the defendant of the plaintiff's guaranty on that point. What we have said as to the time and the shaping of the contract, its effect, and the reasons for making it with the defendant rather than with the plaintiff, all are opposed to the notion that the defendant waived any of its rights. As is remarked by the Circuit Judge the parties continued to act on the assumption that the duty to deliver in Providence continued, and it is apparent from the testimony of the plaintiff's president that the plaintiff considered itself bound to deliver at the defendant's works. We find nothing in this point. We may add that the acceptance of coal under this contract at a later time, after the damage had been done, does not waive or extinguish the cause of action already accrued. See St. Louis Hay & Grain Co. v. United States, 191 U. S. 159, 164, 24 Sup. Ct. 47, 48 L. Ed. 130.

Again, the good faith of the defendant is impugned, it being especially insisted that the defendant, by buying of the Eastern Coal Company at a higher price, gave it a direct inducement to refuse, as it did, to let the defendant have all the coal it needed under its contract with the plaintiff; since it could then turn round and sell to the defendant the same coal at a large advance. An examination of the evidence satisfies us that there is no sufficient reason for reversing the decision of the Circuit Judge, or even to doubt that the defendant acted in good faith.

There is a discussion of the amount of damages, going into details. We think it unnecessary to say more upon this and other lesser matters than that after hearing lengthy oral argument we have read the evidence and the printed brief and that we see no reason why the judgment of the Circuit Court should not be affirmed.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers costs in this court.