### T. W. JENKINS & CO. v. ANAHEIM SUGAR CO.

(District Court, S. D. California, S. D. November 6, 1916.)

#### No. 355.

CONTRACTS ⊜⟼10(4)—VALIDITY—ENFORCEMENT.

Plaintiff, a wholesale grocer, agreed to buy all the sugar that it would require during the month of August from defendant at a fixed price. Ordinarily plaintiff required for its trade about 4,800 bags of sugar. Sugar greatly increased in price, and defendant declined to furnish the sugar desired by plaintiff. *Held*, that the contract was invalid for want of mutuality, for, notwithstanding the rule that a detriment to the promisee will operate as a consideration, the agreement by plaintiff to purchase only from defendant was no consideration, for plaintiff's business was such that it would not desire or require sugar unless it could be resold at an advance, and therefore plaintiff could not be required to purchase any sugar so long as it refrained from purchasing from others than defendant; this being true despite the validity of contracts to furnish necessary commodities for an established business which regularly requires a more or less definite quantity of such commodities.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 37; Dec. Dig. ⊜⟼10(4).]

At Law. Action by T. W. Jenkins & Co., a corporation, against the Anaheim Sugar Company, a corporation. On demurrer to the complaint. Demurrer sustained.

Carroll Allen and Bertin A. Weyl, both of Los Angeles, Cal., for plaintiff.

Gray, Barker & Bowen, of Los Angeles, Cal., for defendant.

BLEDSOE, District Judge. This is a suit for damages in the sum of $13,020, alleged to be due plaintiff because of defendant's breach of contract.

The complaint shows that plaintiff, in June, 1914, the time of the execution of the contract, was engaged in the wholesale grocery business in the state of Oregon, and that, in the carrying on of said business, it had many thousands of customers to whom it sold goods, wares, merchandise, and sugar. Apparently, from the allegations of

the complaint, it had no other business than that above mentioned. It is alleged that the defendant, at all times in question, was aware of the general nature and character and mode of the carrying on of the wholesale grocery business conducted by plaintiff.

Plaintiff also alleges that usually and ordinarily it required during the month of August each year, and had so required during the month of August for many years past, sugar, in bags, for sale by it to its customers at wholesale, in excess of 4,800 bags, and that defendant, at the time of the execution of the contract in question, was aware of the requirements of plaintiff in the behalf just referred to. Under these circumstances, on the 13th of June, 1914, plaintiff and defendant entered into an agreement in writing whereby defendant, a manufacturer of sugar, agreed to sell, and plaintiff, as a wholesale vendor of groceries, agreed to buy, all of plaintiff's "August requirements" of sugar at a fixed price of $4.20 per bag. No other terms, material to this controversy, were inserted. It is than alleged in appropriate language that plaintiff's requirements during the aforesaid month of August were, and it ordered of defendant, 4,800 bags of the sugar described in the agreement above referred to, but that in response to such order and demand defendant shipped and delivered to plaintiff only 600 bags of the sugar. Plaintiff then alleges that it was compelled, because of such refusal and default of defendant, to go into the open market and purchase 4,200 bags of such sugar, at a price amounting to $3.10 per bag in excess of the contract price, and it is because of such excess for the sugar so purchased that the action is maintained.

The case is before the court on demurrer, both general and special, to the second amended complaint, and I am persuaded that, in accordance with a ruling heretofore rendered by the court upon the original complaint, the general demurrer should be sustained at this time. The claim of defendant, of course, is that the contract as entered into is not supported by sufficient consideration to give it vitality; that it is void because lacking in mutuality; that it is one-sided in its entirety, in that the defendant, under any and all circumstances, could be compelled to furnish the sugar covered by the contract, but that plaintiff could in no wise be compelled by defendant to order and accept any sugar thereunder.

After very careful consideration of the particular circumstances of the case, upon reason as well as upon authority, I am constrained to accept defendant's contention. The books are full of cases, and the most important of them have been cited herein by plaintiff, to the effect that a contract binding one party to sell, and the other party to buy, all of the "requirements" of the latter's *established business* as to a given commodity, will be enforced, and this because of the fact that the ascertainment of such requirements is possible with sufficient definiteness and certainty; the subject-matter of the contract being thus rendered certain, in the face of the positive reciprocal obligations complete mutuality is secured, and a breach by either party can be the basis of relief to him who tenders or has given full performance. As a necessary element of this wholesome conclusion,

however, the courts have been forced to indulge in the presumption that the parties intended that the established business of the purchaser was to be carried on, substantially as of the time of contract, and that the purchase and *use* therein of the commodity forming the subject-matter of the contract would be but an *incidental* feature of the carrying on of such established business. Thus, contracts for the purchase and sale of all the ice needed for a hotel, all the coal required for a line of steamships, all the castings required for a certain manufactured product, have been upheld and enforced. It will be observed that the principle involved, and which is reflected in all of the cases, with the exception of but one or two to which attention will be directed, has to do with a purchase by, and a sale for the use of, an established business, in which, presumably, as above adverted to, the use of the commodity purchased is but an *incident* to the carrying on of the business itself, and because of which fact, therefore, the presumption can be indulged in that the business will be carried on, and the incidental use of the commodity will continue, substantially as intended by the parties, entirely irrespective of any rise or fall in the price of the commodity itself.

At the very threshold of the present case, however, we are met by the fact that the business of plaintiff is not that of manufacturing, or of similar import, in which its use of sugar would form but an incident of its general business, but it is that alone of *selling* sugar and other articles at wholesale. It buys such sugar, presumably, only as it can sell at a profit at current market prices, and it refrains from buying sugar which, because of a fall in price, it will be unable to sell, except at a loss to itself. Here the presumption which is indulged in and is referred to in many of the cases cited has no application or play, because of the fact that the purchase and use of the commodity in question becomes, under such circumstances, not an incident to the main business of the purchaser, but the main business itself. Any fluctuation in the price of the commodity, especially if of generous proportions, as in the case at bar, inevitably affects the use of the commodity by the purchaser, and tends to negative the presumption that the business will continue substantially as intended by the parties. In this view of the case, the supposed "requirements" of the plaintiff in its wholesale business are not the requirements of an established manufacturing or similar business, as the phrase is used in the reported cases. Presumably plaintiff, during a given period, will "require" in its business just the amount of sugar it can sell. It will sell the amount of sugar it can dispose of at a profit; the greater the profit, the more it will dispose of; if it can dispose of none at a profit, it will require none.

The situation can be stated concretely in a few words; plaintiff had contracted for all the sugar it would "require," meaning, of course, in its particular business, all it could sell, at the fixed price of $4.20 per bag. Before the contract became operative, the price of sugar in the market rose to $7.30 per bag. It needs no argument to show that, with an unlimited supply—its "requirements"—at $4.20, there would be brought into play no particular effort or business sagacity on the

part of plaintiff to effect sales at a handsome profit with the general market price firm at $7.30. To presume that it would not so conduct itself is to go counter to human experience. On the contrary, if the market price had fallen considerably, plaintiff would have refused to sell, save at a profit on its own purchase price, in which event none would have been so foolish as to buy, or it would have instructed its solicitors that it had no sugar at all to sell. In either event, its "requirements" would have been the same, to wit, practically nil. It would have bought no sugar from third persons, and would therefore have committed no breach of its engagement with defendant. To presume otherwise would be to disregard the most obvious motives of self-interest.

The exact position of the parties and the consequent invalidity of the contract relied upon is portrayed with such clearness and cogency in the decision of the Circuit Court of Appeals for the Seventh Circuit in Crane v. Crane, 105 Fed. 869, 45 C. C. A. 96, that further comment upon it herein would seem to be a work of mere supererogation. Speaking of a similar contract, which was held invalid, Judge Grosscup said:

"Plaintiffs in error were at the time engaged in no manufacture or business that required dock oak lumber as an incidental supply, nor were they under any contract to deliver such lumber to third persons at fixed prices. They were lumber merchants pure and simple—middlemen between the defendant in error and such customers as usually come to a merchant. Should the contract under discussion be upheld, the plaintiffs in error would be held to occupy this advantageous situation: If the prices of dock oak lumber rose, they would, by that much, increase their ratio of profits, and probably, coming into a situation to outbid competitors, increase, also, the quantum of orders; if, on the other hand, prices fell below the range of profits, the orders could be wholly discontinued. On the contrary, the situation of the defendant in error would be this: Should prices fall, it could not compel the plaintiffs in error to give further orders; but, should prices rise, the orders sent in would be compulsory, and the loss measured, both by the increase of the ratio of profits and the probable increase of the quantum of orders. It is needless to say that such a contract is unilateral, and void for want of mutuality. It, in effect, binds the defendant in error alone, for it leaves the plaintiffs in error —whose whole interest is embodied in the prices obtainable—in a situation to either go on, or to discontinue, as such interest develops."

The cases relied upon by plaintiff are Lima Locomotive & Machine Co. v. National Steel Castings Co., 155 Fed. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713; Manhattan Oil Co. v. Richardson Lubricating Co., 113 Fed. 923, 51 C. C. A. 553; Marx v. American Malting Co., 169 Fed. 582, 95 C. C. A. 80; Golden Cycle Mining Co. v. Rapson Coal Mining Co., 188 Fed. 179, 112 C. C. A. 95; A. Klipstein & Co. v. Allen (C. C.) 123 Fed. 992; Sterling Coal Co. v. Silver Spring Bleaching & Dyeing Co., 162 Fed. 848, 89 C. C. A. 520. These, and other cases based upon similar states of fact, which have been examined, though not cited by plaintiff in its brief, announce the doctrine adverted to hereinabove, and with which this court is in entire harmony, that an agreement to buy and sell the "requirements" of an established business, in which the use of the thing "required" is but incidental to the carrying on of the business itself, is valid and will be upheld. It is also true, as contended by plaintiff, that the

courts have departed from their earlier holdings (e. g., Bailey v. Austrien, 19 Minn. 535 [Gil. 465]), and that the well-established tendency now is to hold contracts for the purchase of an article "required," or "needed," or "wanted" for such an established business to be. valid. If the amount of the commodity to be purchased under the contract is determinable by the mere "wish," "desire," or caprice of the purchaser, the courts are still unyielding in their disapproval. Kirk Soap Case, 68 Fed. 791, 15 C. C. A. 540.

No court, however, in so far as I have been able to ascertain, with the exception of the two cases now to be mentioned, has held that a contract for purchase, not for use in an established business, but for sale only, under circumstances similar to the case at bar, is valid. The Supreme Court of Illinois in Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529, did hold that a contract for the purchase and sale of the "requirements" of defendant coal company "engaged in the purchase, *use,* and. sale of coal in its business" was valid. Aside from the fact that the purchaser in that case not only expected to sell coal, but to use it as well, the point considered herein and determined adversely to plaintiff's contention in Crane v. Crane, supra, was not made or considered therein. In addition, the conclusion of the court with respect to this branch of the case is based entirely upon the cases of National Furnace Co. v. Keystone Manufacturing Co., 110 Ill. 427, and Smith v. Morse, 20 La. Ann. 220, both of which had to do with circumstances similar to those in the cases cited by plaintiff, and in which the requirements were for an established business other than that of the sale of the precise commodity in question. The same situation existed in Hickey v. O'Brien, 123 Mich. 611, 82 N. W. 241, 49. L. R. A. 594, 81 Am. St. Rep. 227. The only authority therein cited in support of the conclusion reached was the National Furnace Company Case, which was not applicable under the circumstances shown. The conclusion of the Circuit Court of Appeals of the Seventh Circuit in the Crane Case, hereinabove referred to, finds support, in my judgment, in A. Santaella Co. v. Otto F. Lange & Co., 155 Fed. 719, 84 C. C. A. 145, Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696, and Higbie v. Rust, 211 Ill. 333, 71 N. E. 1010, 103 Am. St. Rep. 204.

I have not overlooked the point made that a sufficient consideration—"detriment to the promisee"—existed, in that plaintiff obligated itself to buy none of its "August requirements" from any person other than defendant. Obviously, however, if its obligation had been to buy, not what it "required," but what it merely "desired," from defendant alone, during August, the same sort of consideration—an agreement not to purchase from any one else—would have subsisted. Notwithstanding this, under the principles referred to in all the cases, even those relied upon by plaintiff, the contract would have lacked validity, not from a want of consideration, but, as herein, from a lack of mutuality.

The demurrer will be sustained.