## McMICHAEL v. PRICE.

No. 23797. May 5, 1936.

Rehearing Denied June 2, 1936.

M. C. Rodolf and Harper & Lee, for plaintiff in error.

Biddison, Campbell, Biddison & Cantrell, for defendant in error.

OSBORN, V. C. J. This action was instituted in the district court of Tulsa county by Harley T. Price, doing business as Sooner Sand Company, hereinafter referred to as plaintiff, against W. M. McMichael, hereinafter referred to as defendant, as an

action to recover damages for the breach of a contract. The cause was tried to a jury and a verdict returned in favor of plaintiff for $7,512.51. The trial court ordered a remittitur of $2,500, which was duly filed. Thereafter the trial court rendered judgment upon the verdict for $5,012.51, from which judgment defendant has appealed.

The pertinent provisions of the contract, which is the basis of this action, are as follows:

"This Contract and Agreement entered into on this 25th day of February, 1929, by and between Harley T. Price, doing business as the Sooner Sand Company, party of the first part, and W. M. McMichael, party of the second part, Witnesseth:

"Whereas, the party of the first part is engaged in the business of selling and shipping sand from Tulsa, Oklahoma, to various points in the United States; and,

"Whereas, the party of the second part is the owner of a plot of ground hereinafter described as follows, to wit: Lot 11, Section 11, Township 19 North, Range 12 East, Tulsa County, and;

"Whereas, the party of the second part has agreed to build a switch connecting with the Frisco Railway and having its terminal in or at said plot of ground above described; and,

"Whereas, the party of the first part is desirous of buying and the party of the second part is desirous of selling various grades and qualities of sand as hereinafter set forth;

"Now, therefore, in consideration of the mutual promises herein contained. the said second party agrees to furnish all of the sand of various grades and qualities which the first party can sell for shipment to various and sundry points outside of the City of Tulsa, Oklahoma, and to load all of said sand in suitable railway cars on said aforesaid switch for delivery to said Frisco Railway Company as initial carrier. Said second party agrees to furnish the quantity and quality of sand at all and various times as the first party may designate by written or oral order, and agrees to furnish and load same within a reasonable time after said verbal or written order is received.

"In consideration of the mutual promises herein contained, first party agrees to purchase and accept from second party all of the sand of various grades and quality which the said first party can sell, for shipment to various and sundry points outside of the City of Tulsa. Oklahoma, provided that the sand so agreed to be furnished and loaded by the said second party shall at least be equal to in quality and comparable with the sand of various grades sold by other sand companies in the City of Tulsa, Oklahoma, or vicinity. First party agrees to pay and the second party agrees to accept as payment and compensation for said sand so furnished and loaded, a sum per ton which represents sixty per cent. (60%) of the current market price per ton of concrete sand at the place of destination of said shipment. It is agreed that statements are to be rendered by second party to first party every thirty days; the account is payable monthly by first party with a discount to be allowed by second party of four cents per ton for payment within ten days after shipment of any quantity of sand. * * *

"This contract and agreement shall cover a period of ten years from the date hereof, and shall be binding and effective during said period, and shall extend to the heirs, executors, administrators and assigns of both parties hereto.

"Dated this 25th day of February, 1929.

"Sooner Sand Company
"By Harley T. Price,
"Party of the first part.

"W. M. McMichael,
"By J. O. McMichael,
"Party of the second part."

Plaintiff alleged the execution of the above contract, and further alleged that defendant at various and sundry times, beginning about five months after the execution of the contract, failed, neglected, and refused to furnish all of the sand which plaintiff had sold for shipment to various points outside of the city of Tulsa; that on or about November 15, 1929, defendant expressly repudiated and renounced the contract and stated to plaintiff that he would no longer consider himself bound thereby and would not further comply therewith. Plaintiff alleged various items of damages in the nature of loss of profits arising by reason of the alleged repudiation and breach of the contract by defendant. It will not be necessary to set out the various items of damage claimed.

Defendant admitted the execution of the contract and alleged his full performance thereof from March, 1929, to November, 1929, and further alleged that plaintiff breached the terms of the contract by failing and refusing to pay for the sand shipped each month as required by the contract; that he advised plaintiff that he would cease making further shipments unless plaintiff paid the accounts monthly as provided in the agreement; that in November, 1929, at a time when the sum of $2,143.32 was due and owing by plaintiff to defendant, defendant refused to make further shipments of sand un-

til said account was paid; that plaintiff has been in default on the contract since April, 1929. For counterclaim against plaintiff, defendant alleged the indebtedness of $2,143.-32, and prayed for judgment against plaintiff in said amount.

By way of reply to defendant's answer and counterclaim, plaintiff denied the correctness of the accounts sued on in the counterclaim and alleged that defendant only furnished to plaintiff one statement, which was on the date of November 10, 1929, which statement was incorrect, false, and fraudulent. In this connection plaintiff claims that in order to make settlements with defendant he was forced to go to the office of defendant and examine the books; that at no time did the books of defendant reflect the correct balance due and owing; that plaintiff from time to time made payments on the account and was assured by defendant from time to time that the books would be adjusted and they would determine the exact amount due and owing to defendant. Plaintiff insists that he was able and willing at all times to make full and complete settlement with defendant whenever the exact amount of the indebtedness could be determined.

Defendant contends that the contract between the parties was a mere revocable offer and is not a valid and binding contract of purchase and sale for want of mutuality. The general rule is that in construing a contract where the consideration on the one side is an offer or an agreement to sell, and on the other side an offer or agreement to buy, the obligation of the parties to sell and buy must be mutual, to render the contract binding on either party, or, as it is sometimes stated, if one of the parties, not having suffered any previous detriment, can escape future liability under the contract, that party may be said to have a "free-way out" and the contract lacks mutuality. Consolidated Pipe Line Co. v. British American Oil Co., 163 Okla. 171, 21 P. (2d) 762. Attention is directed to the specific language used in the contract binding the defendant to "furnish all of the sand of various grades and qualities which the first party can sell" and whereby plaintiff is bound "to purchase and accept from second party all of the sand of various grades and qualities which the said first party (plaintiff) can sell." It is urged that plaintiff had no established business and was not bound to sell any sand whatever and might escape all liability under the terms of the contract by a mere failure or refusal to sell sand. In this connection it is to be noted that the contract

recites that plaintiff is "engaged in the business of selling and shipping sand from Tulsa, Okla., to various points." The parties based their contract on this agreed predicate.

A number of the applicable authorities were discussed by this court in the case of Baker v. Murray Tool & Supp'y Co., 137 Okla. 288, 279 P. 340, where the court was called upon to determine the force and effect of a contract somewhat similar to the contract involved herein. We quote from the body of the opinion:

"In the case of Minnesota Lbr. Co. v. Whitebreast Coal Co., 160 Ill. 85, 31 L. R. A. 529, 43 N. E. 774, the court, in sustaining the validity of a contract of sale by mining company to a dealer in coal of his requirements, said:

" '1. A contract wherein defendant agreed to buy of plaintiff all its "requirements" of coal for the season at a specified price is not void for uncertainty in that the actual amount of the requirement was not stated, it being manifestly the amount of coal defendant needed and used in its business during the season.

" '2. Where defendant agreed to buy its "requirements" of coal of plaintiff, the contract is mutual, as such provision required defendant to buy all its coal from plaintiff, and was one on which plaintiff could maintain an action for breach, should defendant purchase coal elsewhere.'

"If the word 'requirements', as here used, is so interpreted as to mean that appellee was only to furnish such coal as appellant should require it to furnish, then it might be said that appellant was not bound to require any coal unless he chose, and that, therefore, there was a want of mutuality in the contract. But the rule is that, where the terms of a contract are susceptible of two significations, that will be adopted which gives some operation to the contract, rather than that which renders it inoperative. * * * A contract should be construed in such a way as to make the obligation imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used. * * * It cannot be said that appellant was not bound by the contract. It had no right to purchase coal elsewhere for use in its business, unless, in case of a decline in price, appellee should conclude to release it from further liability.

"A similar rule and holding is found in Marx v. American Malting Co., 95 C. C. A. 80, 169 Fed. 582; Manhattan Oil Co. v. Richardson Lubricating Co., 51 C. C. A. 553, 113 Fed. 923; Edison Electric Illum. Co. v. Thatcher, 220 N. Y. 172, 128 N. E. 124; Golden Cycle Min. Co. v. Rapson Coal Min. Co., 112 C. C. A. 95, 188 Fed. 179; and other cases found annotated in 14 A. L. R. 1312-1318, and 24 A. L. R. 1352-1356. * * *

"It is said in the syllabus of Texas Co. v. Pensacola Maritime Corporation (C. C. A.) 279 Fed. 19, 24 A. L. R. 1336:

" 'A contract for the sale of plaintiff's requirements of oil for resale to ships does not lack mutuality, even though the plaintiff had as yet no established business for the sale of fuel oil for ships, and especially where plaintiff did have an established business in the sale of coal as a fuel for ships, since plaintiff's agreement to buy its oil only from defendant was a detriment to it sufficient to support the contract.' "

In the case of T. W. Jenkins & Co. v. Anaheim Sugar Co. (C. C. A. 9th Cir.) 247 Fed. 958, it is said:

" 'An accepted offer to furnish or deliver such articles of personal property as shall be needed, required or consumed by the established business of the acceptor during a limited time is binding and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer.' Golden Cycle Mining Co. v. Rapson, etc., Co., 188 Fed. 179, 112 C. C. A. 95; Sterling Coal Co. v. Silver Spring, etc., Co., 162 Fed. 848, 89 C. C. A. 520.

"Crane v. C. Crane & Co., 105 Fed. 869, 45 C. C. A. 96, cited by the appellee in support of the position of the district court, involved material points of difference from the case made by the complaint under examination. The contract examined in that case left the plaintiff at liberty to buy the lumber he desired elsewhere if the prices of such lumber were more favorable to him, and it did not appear from the complaint that the vendor had knowledge of the purchaser's requirements. These points of distinction are well brought out in Grand Prairie Gravel Co. v. Wills Co. (Tex. Civ. App.) 188 S. W. 680.

"In Lima Locomotive & Machine Co. v. National Steel Castings Co., 155 Fed. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713, the Court of Appeals for the Sixth Circuit, speaking through Judge Lurton, held that where the plaintiff accepted a proposition made by defendant to furnish all deliveries as plaintiff should require for a part of the year at prices mentioned, the plaintiff was under obligation to take from the defendant all the steel castings which it required in its business, and the contract was held not void for want of mutuality. See, also, Marx v. American Malting Co., 169 Fed. 582, 95 C. C. A. 80; Manhattan Oil Co. v. Richardson Lubricating Co., 113 Fed. 923, 51 C. C. A. 553; Ramey Lumber Co. v. Schroeder Lumber Co., 237 Fed. 39, 150 C. C. A. 241; Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co., 120 Ill. App. 23; McIntyre Lumber & Export Co. v. Jackson Lumber Co., 165 Ala. 268, 51 South. 768, 138 Am. St. Rep. 66; Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 326, 83 N. E. 851."

In the case of Wakem & McLaughlin v. Culver (C. C. A. 6th Cir.) 28 F. (2d) 942 (cert. den. 279 U. S. 847, 73 L. Ed. 991) it is said:

"It is not unusual for a producer to undertake to furnish a jobber or other purchaser with all of a certain article that he shall require in his business or with all that he shall require up to a stipulated quantity. Such contracts, while not definite as to quantity, are capable of being made definite, and are enforceable. Loudenback Fertilizer Co. v. Tennessee Phosphate Co. (6 C. C. A.) 121 F. 298, 61 L. R. A. 402; Mills-Morris Co. v. Champion Spark Plug Co. (6 C. C. A.) 7 F. (2d) 38."

In the case of Ehrenworth v. Stuhmer & Co., 229 N. Y. 210, 128 N. E. 108, it is said:

"Plaintiff, in a contract with defendant whereby defendant agreed to sell him all of a certain kind of bread that he would require for a certain territory, held to have assumed an obligation to purchase all of that kind of bread which he could sell in such territory, so that the contract was mutual."

See, also, Marrinan Medical Supply Co. v. Ft. Dodge Serum Co. (C. C. A. 8th Cir.) 47 F. (2d) 458; Bell v. Mulkey (Tex. Com. App.) 16 S. W. (2d) 287; Cantrell v. Knight (Mo. App.) 72 S. W. (2d) 196; Southwest Kansas Oil & Gas Co. v. Argus Pipeline Co. (Kan.) 39 P. (2d) 906; Annotation 74 A. L. R. 477.

At the time the contract involved herein was executed plaintiff was not the owner of an established sand business. The evidence shows, however, that he was an experienced salesman of sand, which fact was well known to defendant, and that it was anticipated by both parties that on account of the experience, acquaintances, and connections of plaintiff, he would be able to sell a substantial amount of sand to the mutual profit of the contracting parties. The record discloses that for the nine months immediately following the execution of the contract plaintiff's average net profit per month was $516.88.

By the terms of the contract the price to be paid for sand was definitely fixed. Plaintiff was bound by a solemn covenant of the contract to purchase all the sand he was able to sell from defendant and for a breach of such covenant could have been made to respond in damages. The argument of defendant that the plaintiff could escape liability under the contract by going out of the sand

business is without force in view of our determination, in line with the authorities hereinabove cited, that it was the intent of the parties to enter into a contract which would be mutually binding.

Defendant relies upon the cases of Crane v. C. Crane & Co., 105 F. 869; Cohen v. Clayton Coal Co., 86 Colo. 270, 281 P. 111; Saginaw Medicine Co. v. Dykes, 210 Mo. App. 399, 238 S. W. 556; Nassau Supply Co. v. Ice Service Co., 252 N. Y. 277, 169 N. E. 383. We have examined these authorities, and each of them involves some element of fact not involved herein, and therefore are not applicable or controlling.

Defendant contends that even though the contract is valid and enforceable, plaintiff failed to make out a case under his own theory. Under this specification defendant argues that the evidence shows that plaintiff and not defendant breached the contract by failure to make monthly payments as provided by the contract and by his failure to keep his accounts with defendant settled in full. In this connection the court gave a special instruction to the jury upon the issue of waiver and instructed the jury in detail upon the issues of fact involved by the pleadings and evidence regarding plaintiff's claim that defendant did not keep a correct account of the indebtedness and did not furnish correct statements of the accounts so that plaintiff at no time was able to determine from said books the correct status of his account. The evidence on this point is conflicting, but the finding of the jury under said special instruction is supported by ample competent evidence and will not be disturbed.

Defendant contends that the trial court erred in refusing a requested instruction relating to the duty of plaintiff to mitigate damages. This issue was not raised by the pleadings of defendant and defendant did not offer evidence tending to show by what amount, if any, plaintiff might have reduced the damages resulting from the breach of contract. See Sharpless Separator Company v. Gray, 62 Okla. 73, 161 P. 1074; Federal Reserve Bank v. Upton (N. M.) 285 P. 494. The trial court did not err in refusing said instruction.

A number of other assignments of error are presented and argued in the briefs. These have been examined and are without substantial merit. Under the instructions of the court the issues of fact were fairly submitted to the jury. The findings of the jury and the amount of recovery are sustained by ample competent evidence. We find no reversible error in the record.

The judgment is affirmed.

McNEILL, C. J., and RILEY, BUSBY, WELCH, CORN, and GIBSON, JJ., concur. BAYLESS and PHELPS, JJ., absent.