## INDEFINITE CONTRACT FOR THE PURCHASE OF LUMBER.

Common Pleas Court of Hamilton County.

### G. W. PHILLIPS v. THE M. B. FARRIN LUMBER CO.

Decided, March, 1909.

*Contracts—Action for Breach of—Sales—Indefiniteness as to Amount to be Furnished—Extrinsic Evidence as to Probable Amount— Lack of Mutuality.*

1. A contract for the purchase of lumber, which is so indefinite that the amount to be furnished under the contract can not be ascertained with any degree of certainty, either from the contract itself or from extrinsic evidence, is not enforcible.

1. A contract indefinite to such a degree is invalid also for lack of mutuality.

*Frank F. Dinsmore,* for the demurrer.
*Burch, Peters & Matthews,* contra.

GORMAN, J.

This cause comes on to be heard on a demurrer of the defendant to the second cause of action set up in the petition on the ground that the allegations thereof do not state a cause of action.

The second cause of action is for damages for the alleged breach by the defendant of a contract which is in writing and as follows:

"MARCH 26, 1907.

"MR. G. W. PHILLIPS,
          "Pierceville, Ga.

"*Dear Sir:*  As per our conversation of this day, we will take what poplar, oak and 'chestnut' you handle this year, at the following prices, f. o. b. cars your shipping point, cash less 2 per cent. discount:  (Here follows a list of the kinds of lumber and prices.)          "Yours truly,

                              "The M. B. FARRIN LUMBER CO.,
                                        "WM. B. HAY,
                                              "*V.-P. & Treasurer.*

"Accepted—G. W. PHILLIPS."

In his first cause of action plaintiff sets forth that he shipped various car loads of lumber upon which he avers there is a balance due.

In his second cause of action he avers that during the year, to-wit, on or about December 27, 1907, the following lumber was purchased by him, and defendant notified that he intended to and did furnish it to defendant and apply it on said contract, to-wit: (Here is set out a list of lumber bought, including the kinds agreed to be accepted by defendant—poplar, oak and chestnut.)

Plaintiff next avers that he notified defendant that he had the lumber last described, and that the defendant refused to furnish him shipping orders although requested so to do, and that by reason thereof defendant having refused to accept said lumber, plaintiff has sustained damages. The causes of action are very loosely and badly pleaded, nevertheless it is apparent that the plaintiff intends to plead a refusal of the defendant to accept the lumber or to comply with the terms of the contract. The demurrer raises the question of the validity of this contract, upon two grounds:

First. The contract, it is claimed, is so indefinite and uncertain in respect to the amount of lumber to be furnished by the plaintiff under the contract, that it is impossible to fix the extent of the liabilities and obligations of the parties thereunder.

Second. There is no mutuality of obligation, such as is necessary to constitute a binding contract.

The court is of the opinion that the quantity of lumber to be furnished under this contract is uncertain, and can not with any degree of certainty be ascertained. The quantity of lumber that plaintiff *could handle* during the year is indefinite and might be so great as to be beyond the control of the defendant to accept or dispose of. There are numerous cases in the books where a contract of this character has been upheld, where there was open a method of determining what quantity of goods could be delivered under the contract; where certainty could be arrived at by extrinsic evidence or by calculation. In such cases the maxim has been applied, *"Id certum est quod certum reddi potest,"* but in no case has such a contract been sustained

where the quantity that could be furnished could not be arrived at by one or the other method.

A few cases will serve to illustrate.

In *Loutenback Fertilizer Co.* v. *Tenn. Phosphate Co.*, 121 Fed. Rep., 298, our Circuit. Court of Appeals held that a contract that one shall buy all they shall require for use *in a particular manufacturing business* for certain time is valid because, though the quantity bought and sold is indefinite, it is ascertainable by the terms of the agreement. The quantity of a certain article that a manufacturing plant can use in a given time is easily susceptible of calculation.

In *Bradley* v. *United States*, 96 U. S., 168, a contract to sell or furnish all of a certain kind of goods that may be *manufactured* by the vendor in a certain *establishment* is valid because the quantity of the kind of goods that the designated establishment can produce is ascertainable.

In *Guillim* v. *Daniel*, 2 Cromp. M. & R. (Eng.), 61, it was held that a contract to accept all the naptha that a manufacturer may make in two years, was valid in so far as it applied to the works then in operation and to its normal capacity, because the quantity thus to be produced could be ascertained.

A contract to sell all the rye straw defendant (a farmer) had to spare was upheld in *Parker* v. *Petit*, 43 N. J. L., 512, because by extrinsic evidence it could be ascertained how much the farmer would have to spare of the rye straw.

To the same effect are the following cases: *Smith* v. *Morse*, 20 La. Ann., 220; *Winn Lumber Co.* v. *Coal Co.*, 160 Ill., 85; *Hickey* v. *O'Brien*, 123 Mich., 611; *Dailey* v. *Clark Canning Co.*, 128 Mich., 591; *Wells* v. *Alexander*, 130 N. Y., 642; *McCall* v. *Icks*, 107 Wis., 232.

In the case of *Mining Co.* v. *R. R. Co.*, 16 Colo., 118, a contract to furnish the product of a certain mine for a fixed period at a certain price per ton was held valid and to be a contract to purchase the entire output of ore mined and marketable from that mine. In deciding the case, the court says:

"True there was no agreement to furnish any ore, but the business of the appellant was mining and producing ore, and it

was to be presumed that it would mine and furnish it if in the mine and accessible.''

In the case at bar, if the averments of the petition disclosed that the plaintiff was operating a mill or mills, and the offer was to sell and deliver to defendant the entire output of his mill or mills, or if he proposed to furnish all the lumber that could be taken from a certain tract or tracts of land, or from a certain district or even a certain state and that offer had been accepted, the court is of the opinion that such a contract would be good as against a demurrer. There is no limit to the quantity or the kinds of lumber to be *handled* by the plaintiff (which would indicate that plaintiff was not a manufacturer of lumber, but a buyer and seller of that commodity) no limitation upon the place or places from which he could draw his lumber to sell to the defendant, and in fact it would seen to be impossible to ascertain how much he might be able to handle or how much defendant would be called upon to accept and pay for. It would seem to the court that this feature of the contract is entirely too indefinite and uncertain, and the measure of damages in case of a breach could not with any degree of certainty be arrived at. As was said by the learned court in the case of *Moses* v. *Marienthal*, 8 Nisi Prius, 404, the contract violates the rule of certainty as to subject-matter which is applicable to all contracts. There must be certainty of the subject-matter of the contract; in other words, the subject-matter of the agreement must be expressed by the parties in such terms that it can be ascertained to a reasonable degree of certainty.

As was said in the case of *Ashcroft* v. *Butterworth*, 136 Mass., 511-514: In agreements of sale and purchase the obligation must be certain, or capable of being made certain in regard to the quantity which the merchant agrees to sell or the vendee agrees to buy.

See, also, *Crane* v. *Crane*, 45 C. C. Ap. Cas., 96 (105 Fed. Rep., 869); *R. R. Co.* v. *Dane*, 43 N. Y., 240; *R. R. Co.* v. *Mitchell*, 38 Texas, 85; *Thayer* v. *Burkhard*, 99 Mass., 508.

In this last case the proposition was to carry freight for certain rates. It expressed no quantities and no means by which

the quantities could be fixed, nor did the acceptance. Plaintiff was obliged to ship none at all by defendant's route, and might ship all he pleased by other routes. This contract was held invalid because it was lacking in definiteness.

The court is also of the opinion that this agreement can not be sustained because it lacks mutuality of obligations. Nowhere in the proposal or the acceptance does the plaintiff bind himself to furnish any lumber at all. He agrees to sell to defendant all the lumber of the kinds described that he *shall handle* during the year, but he does not bind himself to handle any quantity of the lumber. He may refuse or neglect to handle any, and the defendant can have no recourse against him. If he were a manufacturer of lumber of the kind mentioned in the contract, the court would hold him to manufacture as much as he could reasonably produce during the year and apply the production to the filling of the contract; but as we have seen he is not a manufacturer, and there is no limit to the amount he could handle. There is no way of ascertaining and making certain the minimum or maximum quantity of the lumber described which plaintiff could handle during the year; and therefore he was not bound to furnish any quantity whatsoever.

In the case of the *Artemus-Jellico Coal Co.* v. *Ulland,* 7 C. C. —N. S., p. 605, our circuit court held:

"A contract for the sale of a certain proportion of the nut and slack produced from the operation of a coal mine is not mutually binding upon the parties and can not be enforced, when by its terms it is left entire'y optional with the sellers whether or not they will separate any or all of the nut and slack from the run of mine."

See, also, *Cold Blast Transportation Co.* v. *Kansas City B. & N. Co.,* 114 Fed. Rep., 77.

While there is an apparent conflict of authorities on the question of whether or not a contract which provides that one party shall furnish and the other party pay for an indefinite quantity of merchandise, it will be found that the great weight of authority is to the effect that if the quantity, although indefinite, can be ascertained by extraneous testimony, the contract will not be held invalid for uncertainty; and if the contract is one whereby

one party agrees to furnish to another all the goods the second party may need in a certain manufactory or establishment, although the quantity is not stated, yet if it can by the aid of extraneous evidence be made certain and shown that the party who is to receive the goods binds himself not to buy from another, then the courts will hold the vendor to furnish all the other party requires, although the vendor has not bound himself to furnish any quantity whatsoever.

The question of the mutuality of the obligations to perform, seems to turn largely on the question of whether or not the contract is certain as to the quantity to be delivered or can by the aid extraneous evidence be made certain. If the contract is certain as to quantity or can be made so by evidence, then the courts will hold the contract to be mutually binding upon the parties. If it is uncertain as to quantity and can not be rendered certain in that respect by the aid of extraneous evidence, the courts will hold the contract to be invalid not only because of indefiniteness but because of a lack of mutuality.

Having arrived at the conclusion that this contract is lacking in definiteness and mutuality, the demurrer to the second cause of action, which is based upon this contract, must be sustained.