HICKEY *v.* O'BRIEN.

| 123 | 611 |
|-----|-----|
| 128 | 595 |
| 123 | 611 |
| s82NW | 241 |
| s81ASR | 227 |
| 123 | 611 |
| 154 | 398 |

CONTRACTS—MUTUALITY.

    A contract by the terms of which one of the parties agrees to furnish and the other to buy all the ice necessary to carry on the latter's business in a certain locality for a period of five years from date, at a specified price per ton, is not void for want of mutuality, as the quantity to be taken is measured by the necessities of the business, which is presupposed to continue for the time agreed.

Error to Saginaw; Snow, J. Submitted February 1, 1900. Decided April 3, 1900.

Replevin by Eugene L. Hickey against Michael O'Brien, John F. Lucas, and Herman Michel. From a judgment for plaintiff, defendant O'Brien brings error. Reversed.

*James H. Davitt*, for appellant.

*E. L. Beach*, for appellee.

MONTGOMERY, C. J.   In 1895, Kreutzberger & Crabbe were engaged in the business of furnishing ice to their customers in Saginaw.   John F. Lucas & Co. were also engaged in the ice business, and had equipment and conveniences for putting up ice in large quantities.   On the 1st of March, 1895, a contract, to which John F. Lucas & Co. were designated as parties of the first part and Kreutzberger & Crabbe were parties of the second part, was executed by the parties.   Its material provisions were as follows:

"In consideration of the covenants and conditions hereinafter mentioned, first parties hereby agree to furnish second parties with all the ice that they may require to carry on their ice business in said city for the period of five years from and after March 1st, 1895, at the rate of seventy-five ($.75) cents per ton, to be paid for monthly from and after June 1st, 1895.

"Second parties hereby agree to purchase from first parties all the ice necessary to carry on their ice business in said city for the period of five years from and after March 1st, 1895, and to pay first parties therefor the sum of seventy-five ($.75) cents per ton, to be paid monthly from and after June 1st, 1895.

"It is hereby further agreed by and between the parties hereto that, should first parties, during the continuance of this contract, be compelled, by reason of an open winter or otherwise, to harvest ice at a point distant from the Saginaw river, that second parties shall pay the first parties, in addition to the seventy-five ($.75) cents per ton hereby agreed on, the additional cost per ton to first parties in harvesting, delivering, and caring for said ice during that season or seasons.

"It is hereby further agreed by and between the parties hereto that second parties shall at all times keep accurate and correct books of account of their ice business during the continuance of this agreement, and that the books of account so kept shall at all times be open to the access and inspection of the first parties."

Kreutzberger & Crabbe continued to conduct the ice business until about December 19, 1896, when plaintiff claims to have purchased the property of the firm of Mr. Crabbe.    John F. Lucas & Co. brought an action against Kreutzberger & Crabbe to recover damages for the breach of the contract on their part, instituting proceedings by attachment on the property which was transferred to plaintiff by Crabbe.    The defendant O'Brien is a deputy sheriff, and seized the property by virtue of the attachment.    This action is replevin for the property so seized. On the trial it was conceded that Kreutzberger & Crabbe had paid Lucas & Co. for all ice actually delivered, and that the claimed indebtedness named in the attachment suit was for damages for the breach of their contract to take ice at the price stipulated.

The circuit judge charged the jury as follows:

"Before you can find a verdict for the defendants in this case, you must find that the property in dispute is the property of Crabbe and Kreutzberger, or either one or the other.    If Hickey actually purchased the property, it makes little difference what he paid for it, as Lucas and Michel never had any lien upon the property in question, and Crabbe and Kreutzberger had a perfect right to sell it to any one they saw fit; or, as the testimony shows in this case, that Crabbe claimed to be the owner, and not Kreutzberger, and he had a perfect right to sell the property, if he had it, for the sole purpose of getting rid of the Lucas and Michel contract; and if Hickey purchased the property knowing the contract between Crabbe and Kreutzberger and Lucas and Michel was in existence, then the plaintiff in this suit is entitled to a verdict, because he had perfect right to purchase it, and Crabbe had perfect right to sell it."

This instruction was based on a view that the contract did not bind Kreutzberger & Crabbe to take ice for any stated time.    If the circuit judge was right in this, the other questions in the case appear to us of little moment; for, if the contract be so construed, there is no indebtedness to Lucas & Co. to support the attachment, and they were not, therefore, in a position to question the *bona*

*fides* of the transaction. If, on the other hand, the contract bound Kreutzberger & Crabbe to take ice at the fixed price for five years, it can scarcely be claimed that the instruction quoted was correct. The cases which deal with contracts to supply goods to answer the needs of business are not in entire harmony. In *Bailey* v. *Austrian*, 19 Minn. 535, it was held that a contract to supply plaintiffs with all the pig iron wanted by them until a certain date was *nudum pactum*, as plaintiffs did not engage to *want* any quantity whatever. A similar holding was made in Iowa in the case of *Drake* v. *Vorse*, 52 Iowa, 417 (3 N. W. 465). In *Cooper* v. *Wheel Co.*, 94 Mich. 272 (54 N. W. 39, 34 Am. St. Rep. 341), we had occasion to consider the case of *Bailey* v. *Austrian*, but did not in terms decide whether such engagement bound the orderer to take any particular quantity. In *National Furnace Co.* v. *Keystone Manfg. Co.*, 110 Ill. 427, the case of *Bailey* v. *Austrian* is considered as to its bearing on the question here involved. The court point out that in the *Bailey Case* stress is laid on the word "*want*." In the Illinois case cited, the plaintiff agreed to sell to the defendant all the iron needed in its business during the three ensuing years at $22.35 per ton. The defendant agreed to take its year's supply at that price. The court say:

"We do not regard the contract void on the ground stated. It is true that appellee was only bound by the contract to accept of appellant the amount of iron it needed for use in its business; but a reasonable construction must be placed on this part of the contract, in view of the situation of the parties. Appellee was engaged in a large manufacturing business, necessarily using a large quantity of iron in the transaction of its business. It is not to be presumed that appellee would close its business, and need no iron; but, on the contrary, the reasonable presumption would be that the business would be continued, and appellee would necessarily need the quantity of iron which it had been in the habit of using during previous years. It cannot be said that appellee was not bound by the contract. It had no right to purchase iron

elsewhere for use in its business. If it had done so, appellant might have maintained an action for a breach of the contract. It was bound by the contract to take of appellant, at the price named, its entire supply of iron for the year; that is, such a quantity of iron, in view of the situation and business of appellee, as was reasonably required and necessary in its manufacturing business."

See, also, *Smith* v. *Morse,* 20 La. Ann. 220; *Wells* v. *Alexandre,* 130 N. Y. 642 (29 N. E. 142, 15 L. R. A. 218).

In the present case, we think the true construction is that Kreutzberger & Crabbe undertook to take ice of Lucas & Co. for the period of five years; that the quantity which they agreed to take was to be measured by the necessities of their business, but that this presupposed that they would have a business for the time agreed.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.