### E. G. DAILEY CO. v. CLARK CAN CO.[1]

1. Contracts—Proposal and Acceptance—Certainty.

A written proposal and acceptance whereby defendant was to furnish, and plaintiff to buy, all the tin cans that plaintiff might use in its canning factory for a stated period, was not a mere option or unilateral contract, revocable by defendant at any time as to future orders, but a valid, mutual contract, binding on the parties for the time specified.[2]

2. Same—Fraud—Question for Jury.

Whether defendant was misled by plaintiff into a belief that no more cans would be required under the proposed contract than defendant had previously furnished during a like period was fairly submitted to the jury.

3. Same—Construction—Changed Conditions.

The fact that plaintiff increased the capacity of its factory after the contract was made, resulting in a heavier demand on defendant, would not avoid the contract, where such increase was no greater than was necessary to meet the legitimate requirements of the business, and the new conditions were apparently within the contemplation of the parties when the contract was executed.

---

[1] Rehearing denied December 21, 1901.
[2] See *Lanford* v. *Wooden-Ware Co.*, 127 Mich. 614 (86 N. W. 1033)

4. SAME.

Plaintiff was not precluded by the contract from using cans already on hand, or from purchasing elsewhere cans which defendant was unable to furnish on request.

5. SAME.

The fact that plaintiff sold its goods for less than the usual market price, thereby increasing the demand, and requiring more cans, was no defense to an action on the contract.

6. SAME—EXPERT TESTIMONY—HARMLESS ERROR.

The exclusion of expert testimony as to the extent to which the capacity of the plant had been increased was not reversible error, all of the facts in that connection, including the number of cans used both before and after the contract, having been placed before the jury.

Error to Wayne; Rohnert, J. Submitted October 23, 1901. Decided November 4, 1901.

*Assumpsit* by the E. G. Dailey Company against the Clark Can Company for the breach of a contract to furnish certain cans. From a judgment for plaintiff, defendant brings error. Affirmed.

On November 10, 1898, the defendant made to the plaintiff the following proposition:

"We hereby agree to supply to the E. G. Dailey Company, from date to January 1, 1900, all the cans they will use for packing in their factory on Fourteenth street, at the below-mentioned prices, delivered at their factory, Fourteenth street and railway; terms cash, and with the usual guaranty as to leaks. This agreement is made in consideration of the E. G. Dailey Company buying all the cans they may use from us at the below-named prices. In case of destruction of our factory by fire or other causes, we agree to furnish cans as stated in contract.

"Gallons .................. $35.00 per 1,000 Standard Cans.
3 lbs......................  15.35 per 1,000   "         "
2 lbs. ....................  10.85 per 1,000   "         "
Friction Top ..............  17.00 per 1,000   "         "
Tall 1 lb..................   8.00 per 1,000   "         "
Flat 1 lb..................   8.50 per 1,000   "         " "

This contract was accepted in writing November 19th following. Defendant continued to furnish cans under the contract thus made until the 16th day of September, 1899, when it sent a letter to the plaintiff refusing longer to carry out the contract, upon the ground that the capacity of plaintiff's factory had been increased so as to work a violation of the contract, and offering to furnish cans at a greatly increased price, upon the stipulation that they were to be furnished without prejudice to any claim plaintiff might have by reason of the refusal of the defendant to further recognize the contract as valid. To this plaintiff on the same day replied, asserting the validity of the original contract, ordering more goods under it, and stated that, if the defendant still refused to perform the contract, the plaintiff desired to have the goods furnished without waiving its right to sue for the breach of the contract. Defendant continued to furnish goods under this arrangement until the close of the time specified in the original contract. Plaintiff paid for them at the increased price, and brought this suit to recover damages. Plaintiff recovered verdict and judgment.

The defenses urged are:

1. That the offer and acceptance constituted merely an option, and not a contract.
2. That the option or contract was secured by fraud.
3. That the capacity of the plant was so increased as to avoid the contract.
4. That plaintiff produced an abnormal demand by underselling the market.
5. That plaintiff violated the contract by buying goods elsewhere.

The errors assigned relate to the construction of the contract, the rulings upon testimony offered, and the instructions to the jury.

*Moore & Moore* (*Otto Kirchner*, of counsel), for appellant.

*Bowen, Douglas & Whiting*, for appellee.

GRANT, J. (*after stating the facts*).  1. The argument of the learned counsel for defendant is that the written proposal and acceptance constituted not a mutual, but a unilateral, contract, or a mere option, by which defendant at most was only bound to furnish such cans as plaintiff should specifically order before the offer was withdrawn, and that, after having filled all such orders, and withdrawn its offer, all liability ceased. This contract must be construed in the light of the surrounding circumstances. Plaintiff had been in the canning business since 1892. A large part of its material had been put up in tin cans. Defendant, during the year 1897, had furnished cans to the plaintiff to the number of 1,787,591, and had a contract with it covering one-half of that year, but did not supply all the cans then used. Mr. Dailey himself testified that plaintiff did not obtain all its cans used in 1897 from the defendant. Both parties understood that plaintiff would need and would use a large number of cans in its business. It was essential that they be furnished promptly as needed, in order that plaintiff might make contracts in advance, and supply the market. Defendant agreed to supply plaintiff with all that it would use in its factory during the time covered by the contract, and in consideration thereof plaintiff agreed to buy all the cans it would use in its business, at the prices named. Neither knew just how many would be required. One was willing to bind itself to buy what it would use, and the other was willing to bind itself to manufacture and sell that number, whatever it might be. The use of tin cans by plaintiff during the life of the contract was contemplated by both parties. It was made with the knowledge that the greater part of the plaintiff's goods had always been put up in such cans, and that they had always been in use by other manufacturers of like goods. So anxious was each party to bind the other for the entire time, that it was agreed that defendant should furnish the cans even if its factory was destroyed by fire. The proposal and the acceptance constituted a mutual

contract, binding upon both parties. Plaintiff could not go outside to buy without violating it, and the defendant could not refuse to supply plaintiff's demands without equally violating it. The validity of the contract was recognized and acted upon by both parties for nearly a year, and to within three months and a half of its termination. Not until the price of tin—which constituted the main item of cost in these cans—was increased did defendant raise any question under the contract. Neither does it appear to have had any difficulty in furnishing all the cans plaintiff ordered. The case is ruled by *Cooper* v. *Wheel Co.*, 94 Mich. 272 (54 N. W. 39, 34 Am. St. Rep. 341), and *Hickey* v. *O'Brien*, 123 Mich. 611 (82 N. W. 241, 49 L. R. A. 594, 81 Am. St. Rep. 227), where contracts of this character are discussed and authorities cited. See, also, *Minnesota Lumber Co.* v. *Whitebreast Coal Co.*, 160 Ill. 85 (43 N. E. 774, 31 L. R. A. 529). The court below was correct in holding that the contract was valid.

2. The questions of fraud and the increase of the capacity of the plant may be disposed of together, as the testimony upon which these defenses are based is substantially the same. Both questions were left to the jury. Upon the question of fraud the instruction of the court is summed up in the following excerpt from the charge:

"If you find that the plaintiff represented or induced the defendant to believe that, at the time the contract was made, in 1897 it had used no other cans than those bought of the defendant, and that the quantity of cans then used at the time of making the contract would be substantially all the cans used or bought in 1897; and if you find further that the plaintiff had, in 1897, used other cans than those he had bought of the defendant; and if you find the plaintiff had greatly increased the capacity of his factory, and knew that it was using more cans than he had used in 1897, and that he was using more cans in 1898; and if you believe that the defendant had no knowledge of the increase in capacity of the factory; and if you believe that the defendant actually believed that the number of cans that they were using in 1898 would be substantially the

same as those sold by the defendant to the plaintiff in 1897, and, so relying and believing, the defendant entered into the alleged contract; and if you find that those representations were false,—that is, if you find that the comparison between 1897 and 1898 was false,—then your verdict must be for the defendant. In making out a case of fraudulent representation, it is not necessary to prove express affirmative representations. . The whole conduct of the parties, and the impression that it is designed to make, must be considered."

Upon the question of the changes the court instructed the jury as follows:

"No change in the factory or increase in its capacity after or subsequent to November 19, 1898, would justify the defendant in refusing to fill the terms of the contract, unless such change or increase was greater or other than that which would be demanded by the legitimate increase and growth of the Dailey Company's business."

The judge very clearly and very fully elucidates this branch of the case. These instructions were certainly as favorable to the defendant as, under the record, it was entitled to. It is very doubtful whether there was any question of fraud to be left to the jury. Plaintiff made no statement to the defendant of the number of cans it manufactured in 1897 or 1898. Mr. Clark did not ask Mr. Dailey for the number of cans used in 1897, and there is no testimony that Mr. Dailey informed him as to the number. His testimony is as follows:

"I asked him [Dailey] how many cans he would want or use. He said: 'Clark, I can't tell you; but I will look it up and let you know.' So I went back to Mr. Dailey, and asked him, and he said, 'Clark, I haven't had time to look it up; but,' he said, 'you know, and can look it up as well as I can.'"

This conversation is denied by Mr. Dailey, who testified that in one conversation he told Mr. Clark he thought plaintiff would use about 3,000,000, and that, when Mr. Clark asked him if he knew how many cans he would want in 1899, he replied, "You know that just as well as

I do." Without any further inquiries or any further representations, this contract on the part of the defendant was executed.

Many of the improvements now complained of were either then completed or were in progress at the time the contract was made. There is evidence to show that Clark knew of these improvements; that he went through plaintiff's plant; that he congratulated plaintiff's manager, Dailey, upon the increase of business; that Dailey informed him that its business was growing; that he wanted a contract to deliver him just as many cans as were needed; and that Dailey told him the company contemplated building a new brick building, so as to further extend the business. Defendant evidently made this contract, not with the understanding that the capacity of the factory should remain the same as it had been previously, or that the machinery should remain the same as it was, but with the understanding that plaintiff might make improvements incident to the increase of business and the requirements of trade.

3. Upon the question of purchasing cans elsewhere, the court instructed the jury as follows:

"It is a part of the plaintiff's case to satisfy you by a preponderance of evidence that the plaintiff bought from the defendant all the cans used in its factory between November 19, 1898, and September 16, 1899; and unless you are satisfied by a preponderance of proof that the plaintiff did buy of the defendant the cans used by him between these dates of the kind mentioned in the contract, your verdict must be for the defendant, unless you find that the other cans that he did use were those cans which he had in stock, being such a stock as his business required him to have on hand for the continuation of that business, or unless they were cans which he bought where the Clark Can Company could not furnish them, and Mr. Clark informed him that he could not furnish them. Of course, then he would have a right to purchase them elsewhere. If you are satisfied that the only cans that Mr. Dailey used in his business outside of the cans that he bought under this contract were the three-pound cans he testified to, you

will find for the plaintiff. If you find that he used other cans, then there is a misrepresentation, and it would prevent him from recovery."

This instruction was correct, and there was ample testimony to support it. At the time the contract was made, plaintiff had some cans on hand. These were used. The court correctly instructed the jury that, under the evidence in the case, it was entitled to use them. At the time the contract was made, defendant did not have the machinery with which to manufacture the "friction top" cans. Plaintiff had been using those cans for some time. If defendant, when requested, could not furnish these cans, or any others, plaintiff had the legal right to purchase elsewhere. There was a substantial conflict of testimony, and the question was therefore one for the jury.

4. Defendant offered testimony tending to show that the goods manufactured by plaintiff had a market price, and that plaintiff offered its goods at a less price, and thereby created an abnormal demand. This testimony was excluded, and, we think, very properly. Plaintiff did not agree to sell at any stipulated price, or at the market price. It was at liberty to fix its own prices for the goods. If this created a greater demand, it was entirely legitimate, and was one of the increases in business which the contract contemplated. The price of the goods had nothing whatever to do with making the contract. Manufacturers are not bound to sell by any market price if there is one. They are constantly underselling each other, and have the right to do so.

5. A witness testified to the changes that were made in the plaintiff's factory in the latter part of 1898 and in 1899. He was then asked to what extent, in his opinion, such changes increased the capacity of the factory. This testimony was excluded. While it might not have been error to admit the testimony, we do not think any prejudicial error was committed in rejecting it. All the changes were minutely described to the jury; the number of cans used, both before and after the contract, was minutely

given; and plaintiff's books, showing its sales, were introduced. The opinion of this expert would not have been any material aid to the jury in determining the question submitted to them.

Some other questions are raised upon the testimony, but we find no error in them.

The judgment is affirmed.

The other Justices concurred.