MICHAEL MURPHY, Receiver of the Medina State Bank, v. L. B. HANNA, E. J. Weiser, and First National Bank of Fargo, a Corporation.

(164 N. W. 32.)

**Executory contract — for loan of money — breach of — damages — action to recover — pleading — facts.**

1. In an action to recover damages for breach of an alleged executory con-

Note.—On damages recoverable for breach of contract to lend money, see notes in 37 L.R.A. 233; 29 L.R.A.(N.S.) 194; and L.R.A.1916F, 506,—from which it appears that, although cases are rare in which damages are recoverable for breach of an agreement to lend money, since $1 of legal tender is worth no more than

tract to loan money, where the complaint alleges no facts from which it can reasonably be inferred that the borrower had agreed to borrow any sum of money, or, if borrowed, to retain the same for any period of time, paying interest therefor, the complaint states no cause of action for breach of a bilateral executory contract.

**Complaint — loan of money — contract for — failure to keep — obligations — detriment caused.**

2. A complaint which alleges the understanding with which, and the circumstances in which, parties were negotiating for a loan of money from one to the other; and where it further alleges acts done in pursuance of such understanding, which acts involve a detriment sustained by the one desiring to borrow money, which detriment is incurred in reliance upon the promise of the other to loan, the complaint states a cause of action for a breach of a unilateral contract obligation.

**Complaint — allegation of facts — showing agreement — bills receivable — collateral security — good will — cause of action — damages.**

3. Where a complaint alleges that it was agreed between plaintiff and defendants that plaintiff should turn over to the defendants bills receivable approved by them, which they were to hold as security for a loan of money to plaintiff to enable plaintiff to continue its business, thus preventing the sacrifice of its assets and the loss of its good will, and that, in pursuance of this agreement, plaintiff turned over to the defendants its bills receivable selected by them, of the alleged value of about $20,000, which bills receivable are alleged to have constituted the assets of the plaintiff that could be speedily converted into cash; and where it is alleged that defendants thereupon repudiated their agreement and refused to advance any money to plaintiff,—such complaint states a cause of action for breach of contract.

**Contractual obligations — conduct of parties — resulting from — agreement — bilateral contract — not amounting to — construction — conditions — circumstances.**

4. Where a contractual obligation results from the conduct of parties in pursuance of an understanding or agreement, which understanding or agreement by reason of lack of mutuality of obligation does not amount to a mutually binding bilateral contract, it is not essential that the obligation shall be capable of precise measurement in advance. Its extent is controlled by the standard of reasonableness under the existing circumstances.

---

another, and the price of money is the principal and the legal or contract rate of interest. Where special circumstances are shown, substantial damages for breach of a contract to lend money are recoverable, and profits may be recovered if proved with reasonable certainty.

**Loan of money — contract for — breach of — damages to borrower — measure of — nominal damages — not confined to — special damages — resulting from failure — contemplated.**

5. The measure of damages for the breach of a contract obligation to loan money is not necessarily restricted to nominal damages; and where it appears. that special circumstances were known by both parties, from which it must. have been apparent that special damages would be suffered in case of failure to fulfil the obligation, such special damages as may appear to have been reasonably contemplated by the parties are recoverable.

**National bank — loan of money — obligation of assured — effect of keeping — on another bank — ultra vires — contract is not.**

6. Where a national bank assumes an obligation to loan money, which loan, if made, may result incidentally in keeping another bank open for business, such obligation is not *ultra vires* the power of the national bank by reason of the incidental effect of its performance.

**Loan of money — purpose of — use of money — contemplated at time — borrower to pay debts — lender not guarantor — Statute of Frauds.**

7. Where a defendant, in undertaking an obligation to loan money, contemplates that the money will be used to pay debts of the borrower owing to third parties, the defendant is not a guarantor or party undertaking to answer for the debt, default, or miscarriage of another within the Statute of Frauds.

Opinion filed May 12, 1917.

Appeal from the District Court of Cass County, *Pollock,* J.

Plaintiff appeals.

Reversed.

*Purcell, Divet, & Perkins, John W. Carr,* and *Oscar J. Seiler,* for appellants.

A receiver has authority in this state to maintain an action in his own name and recover for the benefit of the corporation for which he is receiver. Comp. Laws 1913, §§ 5183, 7591, 7993.

An improper joinder of parties is not ground for demurrer. Comp. Laws 1913, § 7442; Mader v. Plano Mfg. Co. 17 S. D. 553, 97 N. W. 843.

The complaint does not contain a statement of facts showing that defendant agreed to answer for the debts of plaintiff, and therefore the cause of action is not within the Statute of Frauds, nor was any writing necessary. 9 Enc. Pl. & Pr. 700, 701; Jenkinson v. Vermillion, 3 S.

D. 238, 52 N. W. 1066; Hanson v. Svarverud, 18 N. D. 550, 120 N. W. 550.

Further, any contract which is beneficial to the promisor need not be in writing. The contract here was of that class. Comp. Laws 1913, § 6655, subd. 3.

The question of the power and authority of the defendant bank to make the loan agreed upon is not here involved. The bank clearly had such power. It was not an *ultra vires* contract. It was merely a question of judgment of business policy. Bixby-Theirson Lumber Co. v. Evans, 29 L.R.A.(N.S.) 194, and note, 167 Ala. 431, 140 Am. St. Rep. 47, 52 So. 843.

As against a demurrer the liberal rule of construction has been adopted in this state. Weber v. Lewis, 19 N. D. 473, 34 L.R.A.(N.S.) 364, 126 N. W. 105.

Where one part of a contract is within the power of the parties to make, and another part is without the power, and they are separable, as in this case, that part which is within the power is enforceable. This rule applies to *ultra vires* contracts, Clark, Corp. p. 175; Illinois Trust & Sav. Bank v. Arkansas, 34 L.R.A. 518, 22 C. C. A. 171, 40 U. S. App. 257, 76 Fed. 271; Illinois Trust & Sav. Bank v. Pacific R. Co. 117 Cal. 332, 49 Pac. 197; Philadelphia & S. R. Co. v. Lewis, 33 Pa. 33, 75 Am. Dec. 574; Pittsburgh C. & St. L. R. Co. v. Keokuk & Hamilton Bridge Co. 131 U. S. 371, 33 L. ed. 157, 9 Sup. Ct. Rep. 770.

National banks may not deal in or become the owner of stock in other corporations, excepting that when the acquirement of such stock becomes an incident of the legitimate banking business, or necessary to the protection of the interests of the bank. Such business transactions are not *ultra vires*. Tourtelot v. Whithed, 9 N. D. 467, 84 N. W. 8.

"The object of a contract must be lawful when the contract is made and possible and ascertainable by the time the contract is to be performed. Comp. Laws 1913, § 5868.

A contract to furnish what may be needed or required is sufficiently definite because it is capable of being made definite at the time of performance. Page, Contr. p. 50, § 28; Wells v. Alexander, 130 N. Y. 642, 15 L.R.A. 218, 29 N. E. 142; Hickey v. O'Brien, 123 Mich. 611, 49 L.R.A. 594, 81 Am. St. Rep. 227, 82 N. W. 241; E. G. Dailey

Co. v. Clark, 128 Mich. 591, 87 N. W. 761; Minnesota Lumber Co. v. Whitebreast Coal Co. 160 Ill. 85, 31 L.R.A. 529, 43 N. E. 774; Sutliff v. Seidenberg, 132 Cal. 63, 64 Pac. 131, 469.

A loan of money is presumed to be upon an agreement to pay interest. Comp. Laws 1913, §§ 6069, 6072.

Consequential damages may be recovered because of the parties contracting with special reference thereto, when they could not be recovered but for that fact. The law is well settled sustaining this proposition. Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Reprint, 145, 23 L. J. Exch. N. S. 179, 2 C. L. R. 517, 18 Jur. 358, 2 Week. Rep. 302, 5 Eng. Rul. Cas. 502; Sedgw. Lead. Cas. on Damages, 8th ed. pp. 126, 156.

Circumstances attendant upon the making of a contract need not appear in the contract. They may be communicated. Messmore v. New York Shot & Lead Co. 40 N. Y. 427; Central Trust Co. v. Clark, 34 C. C. A. 354, 92 Fed. 293; Sedgw. Lead. Cas. on Damages, §§ 161–163, 166–169.

Defendant bank well knew the use and purpose to which the money was to be put, and its failure to fulfil its contract to loan the money was a great damage to plaintiff, and a recovery can be had. Townsend v. Nickerson Wharf Co. 117 Mass. 501; Messmore v. New York Shot & Lead Co. 40 N. Y. 422; Wakeman v. Wheeler & W. Mfg. Co. 101 N. Y. 205, 54 Am. Rep. 676, 4 N. E. 264; Starbird v. Barrons, 38 N. Y. 230; Howard v. Stillwell & B. Mfg. Co. 139 U. S. 199, 35 L. ed. 147, 11 Sup. Ct. Rep. 503; Boutin v. Rudd, 27 C. C. A. 526, 53 U. S. App. 525, 82 Fed. 685; Wolcott v. Mount, 38 N. J. L. 496, 20 Am. Rep. 425.

Those damages are recoverable which are the natural and probable result of a breach of a contract, those which the parties may reasonably anticipate as the effect of a breach under the conditions and circumstances of each case. Central Trust Co. v. Clark, 34 C. C. A. 354, 92 Fed. 293; Bixby-Theirson Lumber Co. v. Evans, 29 L.R.A.(N.S.) 194, and note, 167 Ala. 431, 140 Am. St. Rep. 47, 52 So. 843; Lowe v. Turpie, 37 L.R.A. 233, and note, 147 Ind. 652, 44 N. E. 25, 47 N. E. 150.

*Watson & Young* and *E. T. Conmy,* for respondents E. J. Weiser and First National Bank of Fargo, and *Lawrence & Murphy,* for respondent L. B. Hanna.

"Whenever it is purely problematical whether any profits would have

been made or realized by reason of contingencies which might never happen, or where the profits have reference to dependent and collateral engagements entered into on the faith of the performance of the principal contract, probable profits cannot be recovered, because too remote, speculative, and indefinite." Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Reprint, 145, 23 L. J. Exch. N. S. 179, 2 C. L. R. 517, 18 Jur. 358, 2 Week. Rep. 302, 5 Eng. Rul. Cas. 502; Lanahan v. Heaver, 79 Md. 419, 29 Atl. 1036.

The special damages sought in this case are so uncertain and incapable of reasonable ascertainment that they cannot be recovered. Winslow Elevator & Mach. Co. v. Hoffman, 107 Md. 621, 17 L.R.A.(N.S.) 1134, 69 Atl. 394.

A judgment must rest upon some basis of fact in order to stand. Johnson v. Cherokee Land & Iron Co. 82 Tex. 338, 18 S. W. 476; Louisville Bridge Co. v. Louisville & N. R. Co. 116 Ky. 258, 75 S. W. 285; Anderson v. Hilton & D. Lumber Co. 121 Ga. 688, 49 S. E. 725.

The measure of damages for breach of contract to loan money is the amount of the difference between the interest agreed upon and that which the borrower would have to pay for same amount of loan at some time in the market. Hedden v. Schneblin, 126 Mo. App. 478, 104 S. W. 887; Western U. Teleg. Co. v. Hearne, 7 Tex. Civ. App. 67, 26 S. W. 478; New York L. Ins. Co. v. Pope, 139 Ky. 567, 68 S. W. 851; McGee v. Wineholt, 23 Wash. 748, 63 Pac. 571; Bixby-Theirson Lumber Co. v. Evans, 167 Ala. 431, 29 L.R.A.(N.S.) 194, 140 Am. St. Rep. 47, 52 So. 843; Levinski v. Middlesex Bkg. Co. 34 C. C. A. 452, 92 Fed. 449.

A complaint in an action for damages for breach of a contract to loan money is wholly insufficient in the absence of an allegation showing that the borrower had endeavored to obtain a like loan of money elsewhere, and the exact nature and kind of damages sustained should also be specifically pleaded. C. B. Coles & Sons Co. v. Standard Lumber Co. 150 N. C. 183, 63 S. E. 736; Kelly v. Fahrney, 38 C. C. A. 103, 97 Fed. 176; Carsey v. Farmer, 117 Ky. 826, 79 S. W. 245.

And where the agreement is that the money loaned is to be paid back immediately, there can be no damage. Bradford, E. & C. R. Co. v. New York, L. E. & W. R. Co. 123 N. Y. 316, 11 L.R.A. 116, 25 N. E. 499; Goldsmith v. Holland Trust Co. 5 App. Div. 104, 38 N. Y. Supp.

1032; Kelly v. Fahrney, 38 C. C. A. 103, 97 Fed. 176; Bixby-Theirson Lumber Co. v. Evans, 167 Ala. 431, 29 L.R.A.(N.S.) 195, 140 Am. St. Rep. 47, 52 So. 843.

Money is payable immediately under a contract for its payment which does not specify any time for payment. Bradford, E. & C. R. Co. v. New York, L. E. & W. R. Co. 123 N. Y. 316, 11 L.R.A. 116, 25 N. E. 499; Goodell v. Bluff City Lumber Co. 57 Ark. 203, 21 S. W. 104; Wallace v. Ah Sam, 71 Cal. 197, 60 Am. Rep. 534, 12 Pac. 46; Washington & G. R. Co. v. American Car Co. 5 App. D. C. 524.

"Where, upon the trial, plaintiff fails to prove any actual damages, a demurrer to the evidence should be sustained." Bergen v. New Orleans, 35 La. Ann. 523; Mansur-Tebbetts Implement Co. v. Willet, 10 Okla. 383, 61 Pac. 1066; Bohemian-American Workingmen's Gymnastic Asso. v. Northern Bank, 120 N. Y. Supp. 134; Leftkovitz v. First Nat. Bank, 152 Ala. 521, 44 So. 613; San Antonio Gas Co. v. Harber, 1 Tex. App. Civ. Cas. (White & W.) 633; Lamb v. Buker, 34 Neb. 485, 52 N. W. 285; New York Academy of Music v. Hackett, 2 Hilt. 217; Harrison v. Berkley, 1 Strobh. L. 525, 47 Am. Dec. 578; Gerson v. Slemens, 30 Ark. 50; Masterton v. Brooklyn, 7 Hill, 61, 42 Am. Dec. 38; Central of Georgia R. Co. v. Dorsey, 116 Ga. 719, 42 S. E. 1024; Central Trust Co. v. Clark, 34 C. C. A. 354, 92 Fed. 293; Smith v. Curran, 138 Fed. 150; Carsey v. Farmer, 117 Ky. 826, 79 S. E. 245; Kelly v. Fahrney, 38 C. C. A. 103, 97 Fed. 176.

Damages which are traceable in some measure to some tortious act, but resulting chiefly from other and contingent circumstances, and not the legal and natural consequences of the act, are too remote to be the basis of a recovery. Central of Georgia R. Co. v. Dorsey, 116 Ga. 719, 42 S. E. 1024; Central Trust Co. v. Clark, 34 C. C. A. 354, 92 Fed. 293; Rockefeller v. Merritt, 22 C. C. A. 617, 40 U. S. App. 666, 76 Fed. 909, and cases there cited; Howard v. Stillwell & B. Mfg. Co. 139 U. S. 199, 205, 210, 35 L. ed. 147, 149, 151, 11 Sup. Ct. Rep. 500, and cases there cited; Cahn v. Western U. Teleg. Co. 46 Fed. 40.

The contract relied upon is too indefinite and uncertain in its terms that it is unenforceable. Hickey v. O'Brien, 123 Mich. 611, 49 L.R.A. 594, 81 Am. St. Rep. 227, 82 N. W. 241.

Such an agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be used to supply the defect. Jones v. Vance Shoe Co. 115 Fed. 707.

Neither the court nor the jury can make a contract for the parties, nor can they supply defects in one. Sellers v. Greer, 172 Ill. 549, 40 L.R.A. 589, 50 N. E. 246; Durkee v. People, 155 Ill. 354, 46 Am. St. Rep. 340, 40 N. E. 626; Jones v. Vance Shoe Co. 115 Fed. 707; Price v. Wiesner, 83 Kan. 343, 31 L.R.A.(N.S.)927, 111 Pac. 439; Price v. Atkinson, 117 Mo. App. 52, 94 S. W. 816; Price v. Stipek, 39 Mont. 426, 104 Pac. 195; 7 Am. & Eng. Enc. Law, 2d ed. 116; Page, Contr. § 728.

The offer of the plaintiff was so indefinite and uncertain in its terms that no court could ascertain its meaning, or fix the exact liability of the parties, and its acceptance could not result in an enforceable contract. Price v. Wiesner, 83 Kan. 343, 31 L.R.A.(N.S.) 927, 111 Pac. 439; Adams v. Adams, 26 Ala. 272; Bumpus v. Bumpus, 53 Mich. 346, 19 N. W. 29; United Press v. New York Press Co. 164 N. Y. 406, 53 L.R.A. 298, 58 N. E. 527.

The contract is also void in law for want of mutuality. Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co. 57 L.R.A. 696, 52 C. C. A. 25, 114 Fed. 77; A. Santaella & Co. v. Otto F. Lange Co. 85 C. C. A. 145, 155 Fed. 719; Hazelhurst Lumber Co. v. Mercantile Lumber & Supply Co. 166 Fed. 192; Shepard v. Carpenter, 54 Minn. 153, 55 N. W. 906; 1 Elliott, Contr. p. 296.

Where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties may later on agree upon. Shepard v. Carpenter, 54 Minn. 153, 55 N. W. 906; Morrow v. Southern Exp. Co. 101 Ga. 810, 28 S. E. 998; American Refrigerator Transit Co. v. Chilton, 94 Ill. App. 6; Savannah Ice Delivery Co. v. American Refrigerator Transit Co. 110 Ga. 142, 35 S. E. 280; Louisville & N. R. Co. v. Coyle, 123 Ky. 854, 8 L.R.A.(N.S.) 435, 124 Am. St. Rep. 384, 97 S. W. 772; 1 Elliott, Contr. p. 287.

BIRDZELL, J. This is an appeal from an order of the district court of Cass county sustaining demurrers of the various defendants to a complaint. Omitting the formal allegations, the complaint is as follows:

"That, on or about the 21st day of June, 1915, the said district court duly authorized plaintiff, as such receiver, to bring this action.

"That, on or about the 10th day of January, 1914, said bank was a going concern, but indebted, in large amounts, to divers persons; and its ability to meet and discharge its obligations to its depositors and other creditors was questioned by the public, and grave danger existed that the depositors and other creditors would institute a run upon said bank and demand payment of deposits in such unusual amounts that it would be unable to realize upon its assets expeditiously enough to enable it to meet such calls; and, in truth and in fact, the assets of said bank were of such character they could not be realized upon in sufficient amounts to meet calls being made and about to be made by its depositors and other creditors; and there was grave danger that it would be compelled to suspend payment, and go into liquidation, and have its affairs closed up by a receiver.

"That the assets of said bank were actually worth and of the value of $85,000, to be used, realized upon, collected, and handled in the continuation of the business of said bank in the due and ordinary course of its banking business, and said bank was possessed of a business good will of large value; but a large part of such assets were in the form of second and third securities upon property, securing the obligations of persons against whom immediate collection could not be enforced and the collection of which would require a considerable period of time, extensions, renewals, and in many cases, the advancement of money, by said bank, for the protection of said securities; and, as a whole, the character of said assets were such that, unless held, handled, used, and collected in the regular and continued conduct of the banking business of said bank, or if attempted to be handled, collected, or used by a receiver or assignee, or otherwise than in the continuation of the regular business of said bank, they would become immediately greatly depreciated in value, and, in many cases, practically worthless.

"That, at said time, the defendants and financial concerns in which they were interested were creditors of said bank to the amount of several thousand dollars, and holders of its stock as collateral security, and it was the mutual desire, and to the mutual interest of said bank and the defendants, that the bank continued as a going concern and preserve its good will until its assets could be realized upon to their full value in the regular course of its banking business; and it was then endeavoring to convert into cash all its assets immediately available for that purpose

for the express and only purpose of meeting the demands of its depositors and immediately maturing obligations, which endeavors and purpose were then and there communicated by it to defendants, who had full and complete knowledge thereof.

"That it was then and there discussed, between said bank and said defendants, and fully understood by all thereof, that, to avoid an immediate suspension of business by said bank, its assets must be converted into cash as expeditiously as possible to meet the claims of depositors and immediately maturing demands; and that a failure to so realize upon and convert such assets as were available into cash would inevitably lead to an early suspension of business by said bank, which would in turn lead to an immediate and large depreciation in the value of its assets and the total loss of the good will of the business as a going concern.

"That, on or about the said 10th day of January, 1914, the defendants, jointly and severally, did contract and agree with said bank as follows, to wit: That said bank should turn out and deliver to the defendants such of its unpledged bills receivable as they, the defendants, should elect to receive as collateral security, and, in consideration thereof, and of the promise to repay the same, and the legal liability arising to repay the same, they, the defendants, would advance to said bank, and place at its disposal, sufficient cash to meet all its obligations and enable it to continue the regular course of its banking business; and, while it was then impossible to ascertain the exact amount necessary for the accomplishment of such purpose, it was contemplated and understood that such amount would be upward of $20,000. That, in carrying out the terms of such agreement, the defendants did select, and said bank did turn over and deliver to them, bills receivable to the value of about $20,000, to be held by the defendants as collateral to such advances, and which made up and constituted the assets of such bank that were of the character that could be speedily converted into cash or made available to enable said bank to continue in business.

## "VI.

"That at the time of making such agreement the said bank and the defendants had full knowledge of all the facts and circumstances set

forth in subdivision number five hereof, and contracted with special reference thereto and with a full understanding that the moneys agreed to be advanced by them were to be used by the bank for the special purpose of meeting the demands of depositors and holders of immediately maturing claims; that, after devesting itself of the assets pledged to them as aforesaid, said bank would have no means of raising money to meet such claims; that the inevitable result of a failure to advance such money would be the suspension of business by said bank, its insolvency, and the consequent depreciation of the value of its assets; and the entire loss of the value of the business good will.

"That thereupon the defendants repudiated their said agreement and refused to advance any money to said bank to enable it to continue in business.

"VII.

"That, by reason of the default of defendants in failing and refusing to advance and furnish to said bank the cash necessary to enable it to continue in business, it was forced to close its doors and discontinue its banking business; and, as direct results thereof, the proceedings were commenced as hereinbefore mentioned, resulting in the appointment of this plaintiff as receiver; and, by reason of the premises, the assets of said bank, which were of the value of $85,000, were reduced to the value of only $40,000, and the value of its good will was entirely destroyed, to the damage of said bank, its stockholders, and creditors of $50,000.

"Wherefore, plaintiff demands judgments against the defendants and each of them for the sum of $50,000, with interest from and since January 15, 1914."

To the above complaint a demurrer was interposed on behalf of defendant Hanna, and separate demurrers were filed by the defendants the First National Bank and E. J. Weiser. The demurrers raise the following questions: (1) The sufficiency of the facts alleged to constitute a cause of action; (2) the misjoinder of causes of action and parties defendant; and (3) the legal capacity of plaintiff to sue.

In support of the order of the trial court sustaining the demurrers, the counsel for respondents contend:

(a) That the contract or agreement set forth in the complaint is so uncertain and indefinite as to render it void;

(b) That, assuming the contract to be valid, the damages resulting from its breach would necessarily be so uncertain and speculative as to afford no basis for recovery;

(c) That the contract, if such there be, is *ultra vires* and void as to the defendant First National Bank; and

(d) That the contract or agreement relied upon is within the Statute of Frauds.

The complaint alleges an agreement between the Medina State Bank, on the one side, and the defendants, jointly and severally, on the other, whereby the bank should deliver such of its unpaid bills receivable as the defendant should elect to receive as collateral security, in consideration of which and of the promise to repay, the defendants would advance to the plaintiff bank sufficient cash to meet all its obligations and enable it to continue its banking business. It is further alleged as the understanding of the parties at the time that the amount needed would be upward of $20,000. While the complaint is replete with allegations setting forth the inducement of the contract and circumstances which, if proved, might be proper to consider in determining the amount of damages recoverable,—allegations in aggravation of damages,—the foregoing statement comprises all the allegations touching the terms of the contract entered into. Immediately following the foregoing is an allegation of at least a partial performance of the agreement set forth. It is alleged that, in carrying out the terms of the agreement, the defendant selected and the plaintiff delivered to them bills receivable of the approximate value of $20,000, for the purpose of furnishing collateral to such advances, which bills made up and constituted the assets of the bank that were of such character as to be readily convertible into cash. A careful examination of the allegations of the contract, construed in the light of the inducing matter, but separate and apart from the allegations as to what was done under it, leads us to conclude that, as a wholly executory, bilateral contract it was not enforceable, by reason of a lack of mutuality of obligations. Viewed as an executory contract, it is clear that the State Bank of Medina bound itself to borrow no money from the defendants, either absolutely or conditionally. If the plaintiff bank had, after making the agreement above referred to, found another bank or an individual that would have been willing to advance the necessary cash upon more favorable terms than those alleged, or rea-

sonably implied from those alleged, it could not, with reason, be contended that they would have been in any way liable to the defendants had they borrowed money from such third party.   Austin Real Estate & Abstract Co. v. Bahn, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430; McManus v. Bark, L. R. 5 Exch. 65, 39 L. J. Exch. N. S. 65, 21 L. T. N. S. 676.  In the Texas case referred to, the creditor agreed to an extension of one week, in consideration of the promise of the debtor to pay within that time, and it was held that the promise of the creditor was without any consideration for the reason that the debtor was not obliged to retain the money or to pay interest for any period.   The complaint in the case at bar states no fact from which it can reasonably be inferred that the State Bank of Medina became bound to borrow any money from the defendants, and in so far as it is sought to hold the defendants liable for the repudiation of an obligation to loan money, resting upon a counter obligation to borrow, we find no such corresponding promise or obligation on the part of the plaintiff; nor is there any allegation from which it can be reasonably inferred that any other detriment was suffered or consideration furnished by the defendants.   In the case of Wells v. Alexander, 130 N. Y. 642, 15 L.R.A. 218, 29 N. E. 142, so much relied upon by appellant in the case at bar, there was a proposal to furnish certain steamers with such coal as would be required for a stated period.   The acceptance of the proposal bound the owners to purchase such coal as would be required in the operation of the vessels. Mutuality of obligation was present in that the purchasers were bound by their acceptance to purchase the coal required from the sellers.   The contract thus formed was thus mutually obligatory from the beginning, and while prospectively indefinite as to subject-matter it nevertheless contained its own measure of definiteness as to quantity.   The court applied the maxim, *"Certum est quod, certum reddi potest,"* and held that damages were recoverable for breach of the contract.

There are many cases in the books in which it is held that damages may be recovered for breach of contract, where the measure of performance is indefinite in the sense that exact quantities cannot be determined in advance; as where, for instance, the quantity is to be determined by the necessities of a business or the reasonable requirements of a factory. Hickey v. O'Brien, 123 Mich. 611, 49 L.R.A. 594, 81 Am. St. Rep. 227, 82 N. W. 241; E. G. Dailey Co. v. Clark Can Co. 128 Mich. 591,

87 N. W. 761; Minnesota Lumber Co. v. Whitebreast Coal Co. 160 Ill. 85, 31 L.R.A. 529, 43 N. E. 774; (But see T. W. Jenkins & Co. v. Anaheim Sugar Co. 237 Fed. 278). But in all such cases upon analysis it will be found that the contracts involved mutuality of obligation in that both parties had restricted their contractual freedom by binding themselves mutually to the terms of an agreement involving a limitation of legal rights,—the purchasers being as much bound to look to the particular source for the goods required as were the vendors to supply them. In this there was consideration and mutuality of obligation. In our opinion there is a clear distinction between a case where a merchant agrees to buy from a certain seller such a quantity of a certain kind of goods as he may require in the operation of his business, and an agreement by a borrower to borrow sufficient money to meet his existing obligations, the whole of which sum he could return at once without sustaining any liability whatsoever. The contract set forth in the complaint is of this character, and it is consequently lacking in the essentials necessary to make it a binding obligation for the loaning and borrowing of money.

In so far as the complaint purports to state a cause of action for the breach of a wholly executory contract to loan money, and in so far as the special damages are predicated upon the breach of such a contract, the complaint is demurrable and the special damages are not recoverable.

But the foregoing considerations do not wholly dispose of the questions raised on this appeal. The complaint alleges more than a purely executory contract. It alleges, as hereinbefore stated, the circumstances in which the parties were negotiating, their purposes, and the objects which they had in view, as well as the doing of certain things by way of conforming to those purposes and realizing the objects. These allegations give rise to an additional inquiry to determine whether a cause of action in contract is stated.

A contract may fail wholly as an executory agreement carrying mutual obligations of the parties from the time it is made, and yet result in contractual obligations depending upon what is done in pursuance of it. Says Baron Park in the case of Kennaway v. Treleavan, 5 Mees. & W. 498, 151 Eng. Reprint, 211: *"But a great number of cases are of contracts not binding on both sides at the time when made, and in which the whole duty to be performed rests with one of the contract-*

*ing parties.* A guaranty falls under that class; when a persons says: 'In case you choose to employ this man as your agent for a week,, I will be responsible for all such sums as he shall receive during that time, and neglect to pay over to you,'—the party indemnified is not therefore bound to employ the person designated by the guaranty; but if he do employ him, then the guaranty attaches and becomes binding on the party who gave it." See also Offord v. Davies, 12 C. B. N. S. 748, 142 Eng. Reprint, 1336, 31 L. J. C. P. N. S. 319, 9 Jur. N. S. 22, 6 L. T. N. S. 579, 10 Week. Rep. 758. The principle stated by Baron Park is elementary and without question is applied universally to offers of guaranty. In a later English case (Great Northern R. Co. v. Witham, L. R. 9 C. P. 16, 43 L. J. C. P. N. S. 11, 29 L. T. N. S. 471, 22 Week. Rep. 48) which has been frequently cited with approval and followed in this country, we find a very apt illustration of the operation of the same principle. In this case a tender was made for the supply of certain materials, including iron, as the railway company's storekeeper "may order from time to time." This tender was formally accepted by the directors of the railroad company and under it several orders for iron were filled. Ultimately the defendant refused to supply more iron, and an action was brought for a breach of contract, consisting in the failure to fill an order which had been sent in before the arrangement was repudiated by the defendant. The action was held to be maintainable, the court being of the opinion that the defendant was bound to deliver goods when an order was given, and intimating that the defendant might have absolved himself from the further performance by giving notice. See also Reg. v. Demers [1900] A. C. 103, 69 L. J. P. C. N. S. 5, 81 L. T. N. S. 795; 9 Cyc. 327; Willetts v. Sun Mut. Ins. Co. 45 N. Y. 45–47, 6 Am. Rep. 31. In this connection some of the cases are worthy of special mention.

Where an agreement is largely executed, and where its apparent obligations have been carried out in expectation of the making of a contract in the future, it has been held by highly respectable authority that even the agreement to make such a contract in the future is not a nullity. Slade v. Lexington, 141 Ky. 214, 32 L.R.A.(N.S.) 201, 132 S. W. 404. In this case there was an agreement between plaintiff and defendant to the effect that the plaintiff should supply water to the defendant city for twenty-five years, the defendant having an option

to purchase the plant at a price to be fixed by valuers. The contract contained the further stipulation that, if the city should not purchase, "it shall renew the contract with said company for twenty-five years longer, upon terms as mutually agreed upon at that time." The foregoing provision was held by the court to create an obligation on the part of the city to renew the contract on reasonable terms. It is quite apparent that the considerations which lead the courts to hold purely executory agreements valid on grounds of uncertainty of subject-matter and indefiniteness of obligation are largely, if not wholly, inapplicable where circumstances are present warranting the existence of a contract obligation resulting from reliance upon a promise of the obligor. Instances of obligations of such character, which in effect remain indefinite and uncertain until measured, either by the subsequent adjustment of the parties or the determination of a court or jury, are numerous and of too frequent occurrence to require citation. Suffice it to say that they form a most numerous group in that large class of obligations enforced at the common law through the medium of the common counts in assumpsit.

In the case of Chicago & G. E. R. Co. v. Dane, 43 N. Y. 240, the defendant wrote a letter agreeing to receive and transport not exceeding 600 tons of freight, on account of the Chicago & Great Eastern Railroad Company, the addressee of the letter. The plaintiff Railway Company, promptly answered the letter as follows: "In behalf of this company I assent to your agreement, and will be bound by its terms." The court held that the word "agree" in the defendant's letter was equivalent to "offer," and that the plaintiff offeree had manifested an unqualified assent to the terms of the offer. No contract resulted, for the reason that the plaintiff had in no way bound itself by its acceptance. The court, in speaking of the effect of the purported acceptance, said (page 242): "This amounted to nothing more than the acceptance of an option by the plaintiff for the transportation of such quantity of iron by the defendants as it chose; and had there been a consideration given to the defendants for such option, the defendants would have been bound to transport for the plaintiff such iron as it required within the time and quantity specified, the plaintiff having its election not to require the transportation of any. . . . There being no consideration for the promise of the defendants, except this acceptance by the plaintiff, and

that not binding it to furnish any iron for transportation unless it chose, it follows that there was no consideration for any promise of the defendants, and that the breach of such promise furnishes no foundation for an action." The court further held that though the offer and purported acceptance created no contractual obligation, the defendant would have been bound had the plaintiff accepted defendant's proposition for any specific quantity not beyond that limited.

In the case of Thayer v. Burchard, 99 Mass. 508, the alleged contract upon which the action was founded was quite similar to that in the case of Chicago & G. E. R. Co. v. Dane, supra. Plaintiffs, who expected to buy grain in the West, obtained from defendants a statement of the rates at which it was willing to receive and transport such grain. Defendants had written to the effect that they would take flour and grain from plaintiffs and ship at certain rates. This proposition was accepted by plaintiffs. In speaking of the effect of the acceptance, the court said (page 518): "The plaintiffs did not, by their acceptance of the terms, engage to furnish goods for transportation. Although they should purchase goods for that purpose, they might, at any time before their delivery at Schenectady and notice to the defendants to transport them, divert them to another route. Until such delivery and notice, there was no mutuality of obligation. The matter stood, in this respect, as upon an open proposition by the defendants, which the plaintiffs might make operative as a contract by delivering goods and calling for their transportation. To extend the obligation of the defendants beyond that limit would leave it, as it seems to us, without limit and without mutuality."

In Minnesota Lumber Co. v. Whitebreast Coal Co. supra, 160 Ill. 85, 31 L.R.A. 529, 43 N. E. 774, a lumber company had bound itself in a "memorandum of contract" to "buy its requirements of anthracite coal" for a certain season from the coal company. It was urged that the contract was void for uncertainty and for want of mutuality. In holding the contract valid the court uses the following language: "Contracts should be construed in the light of the circumstances surrounding the parties, and of the objects which they evidently had in view. The circumstances, which both parties had in view at the time of making the contract, may be referred to for the purpose of determining the meaning of doubtful expressions. Courts will seek to discover and give effect

to the intention of the parties, so that performance of the contract may be enforced according to the sense in which they mutually understood it at the time it was made; and greater regard is to be had to their clear intent than to any particular words which they may have used to express it." In interpreting the contract in the light of the above principle, the court held the word "requirements" equivalent to the word "needs," and applied it in the light of ordinary needs of the business for the particular season. Being so construed, it was held that damages could be recovered for the breach.

In the case of Jones v. Vance Shoe Co. 115 Fed. 707 (cited by respondents), the contract sued on was a contract to pay into the treasury of the Smith-Jones Company $20,000 cash, to guarantee certain notes to the amount of $25,000, "and to provide, as a loan to the said Smith-Jones Company, whatever additional capital is needed to provide for a working fund." The breach assigned was the failure to perform the obligation of the clause quoted above. The contract was held too indefinite to afford a basis for recovery. It should be noted that the action was brought by one stockholder against another,—it appearing that the defendant owned two thirds of the stock, while the plaintiff owned less than one third, and that, in addition to paying the $20,000 in cash into the treasury of the company when the contract was made, defendant had supplied the company with money to carry on its business for six months. It was charged in the declaration that the defendant, through its officers, controlled the Smith-Jones Company. The court thought that the question of the reasonableness of the time during which defendant should supply the working capital was properly determined by the directors of the Smith-Jones Company. Furthermore, inasmuch as the details concerning the loans were left to be controlled by the directors of the Smith-Jones Company, and inasmuch as defendant, on account of its stock ownership, properly controlled the board of directors and had the largest interest at stake in the Smith-Jones Company, there was no foundation for a recovery by the plaintiff.

The court did say that it was content to place the judgment on the vagueness of the stipulations in the contract; but it must be borne in mind that the defendant furnished all the money that was demanded by the board of directors of the Smith-Jones Company, and that plain-

tiff's real grievance was alleged improper management of the Smith-Jones Company by the defendants.

In United Press v. New York Press Co. 164 N. Y. 406, 53 L.R.A. 288, 58 N. E. 527 (also cited by respondents), suit was brought for breach of an executory contract under which plaintiff was to deliver to defendant a news report and defendant to pay "not exceeding $300 during each and every week." The contract was made in 1892 and it was to continue until 1900. The court laid down the rule that the agreement must be neither vague nor indefinite; and they held that the contract in question, which provided for no rate of compensation and no fixed price at which the defendant was bound to take and pay for the news report, was lacking in the element of mutuality. It must be remembered that the damages were predicated upon the provisions of the contract, which were wholly executory; that is, upon the obligation to continue to take the news report in the future. In passing it might be noted that this case has been thought open to criticism on the ground that the contract realy bound the defendant to pay at regular rates for news up to $300 per week. See 14 Harvard L. Rev. 463.

In the case at bar it is alleged that the defendants selected and the plaintiff turned over to them bills receivable to the value of about $20,-000; and that this was done in pursuance of the agreement whereby the defendants had undertaken to loan money to the plaintiff bank. Even though the defendants' promise was not binding at the time it was made, by reason of a lack of a corresponding obligation on the part of the plaintiff to borrow money, yet they are in the position, as a result of the agreement (using this term in the sense common understanding, rather than as referring to a legally binding contract) entered into, of offering to loan to the plaintiff money in exchange for collateral to be selected by the defendants and turned over by plaintiff. The plaintiff alleges a full compliance with the terms upon which the defendants were willing and offered to loan money, and it further alleges that the defendants repudiated their agreement and "refused to advance any money to said bank to enable it to continue in business."

We are of the opinion that a contractual relation between the Medina State Bank and the defendants sprang into existence by reason of the selection and acceptance by the defendants of the collateral security. In the absence of any express agreement or understanding, the defend-

ants thereby became obligated to loan to the Medina State Bank such a sum of money as would ordinarily be loaned by one bank or individual to another upon such collateral security, under all the circumstances then existing and contemplated by the parties. It will be competent to show, however, with what mutual understanding, if any, the plaintiff bank parted with the securities which, it is alleged, were turned over to the defendants. It is, of course, self-evident that the defendants could, in no event, be held to have agreed to loan a sum in excess of that for which the $20,000 of collateral selected by them was, under the arrangement alleged, considered by the parties to be adequate security, and the only damages which defendants could be holden for are those shown to have resulted from their failure to loan such amount of money. As this case is before us on a demurrer, we are, of course, wholly in the dark with respect to the actual facts in the case, and must accept the facts stated in the complaint as true, with reasonable inferences in their favor.

It is true that the complaint sets forth no specific promise to loan a definite sum of money, but we are satisfied that, if the evidence should clearly establish the facts alleged with reference to the understanding of the parties at the time, the jury would have a right to infer from such facts an agreement to advance what would be considered a reasonable sum, in view of all the circumstances, including the value of the securities turned over. This matter, however, must depend wholly upon the evidence to be adduced at the trial. It must be borne in mind that the transaction alleged is unusual; that it was made for a special purpose; and that defendants had an apparent interest in the accomplishment of the objects sought to be attained, chief of which was the continued existence of the bank. It is not only alleged that the assets turned over to the defendants were of the value of about $20,000, but it is also alleged that they constituted "the assets of (the) bank that were of the character that could be speedily converted into cash or made available to enable such bank to continue in business." A contract may be somewhat ambiguous and indefinite, not merely as a result of words employed by the parties, but as a consequence of more or less equivocal acts as well. In such cases it is fundamental that, in measuring the obligation which one assumes by reason of his words or conduct, it is competent to consider the surrounding circumstances, in order that the

intention of the parties may be applied and the obligation measured by the standard employed by the parties during their negotiations. Merriam v. United States, 107 U. S. 437, 27 L. ed. 531, 2 Sup. Ct. Rep. 536; 9 Cyc. 587, 588. The allegations quoted above, if established, would, in our judgment, amount to what is termed by the supreme court of Massachusetts in the case of the First Nat. Bank v. Watkins, 154 Mass. 385, 28 N. E. 275, "an ordinary case of a unilateral contract growing out of the offer of one party to do something if the other will do or refrain from doing something else;" and where it was held that "if the party to whom such an offer is made acts upon it in the manner contemplated, either to the advantage of the offerer or to his own disadvantage, such action makes the contract complete."

Assuming for the purpose of this discussion that the plaintiff will be able upon the trial to establish facts rendering the defendants obligated to loan a sum of money to the plaintiff which would have been sufficient to have enabled it to continue its business, it must yet be determined whether the damages resulting from the breach of this obligation would necessarily be so speculative and uncertain as to afford no basis for recovery. It is true that the complaint alleges special facts as a basis for the recovery of damages which it might be difficult to establish with sufficient certainty as to cause and effect, to afford a legal basis for the recovery of special or even substantial damages in any amount; but we are of the opinion that the allegations are sufficient to support a recovery of substantial damages if the difficulties of making proof are successfully met. Plaintiff alleges "that, by reason of the default of defendants in failing and refusing to advance and furnish to said bank the cash necessary to enable it to continue in business, it was forced to close its doors and discontinue its banking business; and, as direct results thereof, the proceedings (receivership) were commenced as hereinbefore mentioned." If the plaintiff can prove this allegation with sufficient directness and certainty as to render improbable all other causes of the result alleged than that attributable to these defendants, we have no doubt that the law will be satisfied in its requirement of certainty of causation. As to the recovery of the special damages which the plaintiff asks, he may safely rely upon the rule announced in the case of Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Reprint, 145, 23 L. J. Exch. N. S. 179, 2 C. L. R. 517, 18 Jur. 358, 2 Week. Rep. 302,

5 Eng. Rul. Cas. 502. In passing, however, it should be said that an examination of the authorities cited to the effect that only nominal damages are recoverable for breach of a contract to loan money is not applicable to the situation described in this complaint. There is no reason why substantial damages may not be allowed for the breach of a contract to loan money, within the rule of Hadley v. Baxendale, supra, where special circumstances were known by both parties to exist at the time the contract was made, from which it must have been apparent that special damages would be suffered in case of the failure to fulfil the obligation. We find a very satisfactory discussion of the legal principles involved in the case of Holt v. United Security L. Ins. & T. Co. 76 N. J. L. 585, 21 L.R.A.(N.S.) 691, 72 Atl. 301. In this case the action was brought to recover damages for a breach of contract to loan money. The contract for the loan embodied a special arrangement whereby one Chapman was to have from the defendant $32,500 to reimburse him for the cost of a new building, the repayment of which amount was to be secured by endowment policies upon the lives of Chapman and the plaintiff Holt. It was argued that only nominal damages could be recovered for the failure of the defendant to loan the money; but the court held, in view of the special circumstances, that substantial damages covering losses directly accruing, as well as gains prevented, might furnish a legitimate basis for compensation to the injured party. It was held, further, that expenditures fairly incurred in preparation for performance or part performance, where such expenditures are not otherwise reimbursed, would be proper subjects for consideration in estimating the damages. The court quotes with approval from the opinion of Mr. Justice Bradley, in United States v. Behan, 110 U. S. 338, 28 L. ed. 168, 4 Sup. Ct. Rep. 81, as follows: "It does not lie, however, in the mouth of the party who has voluntarily and wrongfully put an end to the contract to say that the party injured has not been damaged, at least, to the amount of what he has been induced fairly and in good faith to lay out and expend." We do not feel it incumbent upon us at this time to enter into a consideration of the question as to what damages may be brought within the rule of these cases. It will be time enough to consider that question when the court has the evidence before it.

It is claimed that the contract is *ultra vires* and void as to the de-

37 N. D.—12.

fendant the First National Bank. The lower court construed the contract as involving an assumption on the part of the defendant national bank, with the other defendants, of an obligation "to float and keep alive" another bank. We do not so construe the contract in question, as appears from our holding that the contract is not enforceable as an executory arrangement for the future loaning of money, and that an obligation to loan money only resulted from the fact that the offer from defendants to loan has been accepted by plaintiffs. The defendants were under no obligation to keep the institution going. We cannot see that the contract embraced an obligation to "float and keep alive another bank," merely because the making of the contemplated loan might have enabled the institution to keep open. It is not at all unusual that banks, by loaning money, enable business institutions to "float and keep alive" in this indirect way,—in fact, that is one of their chief functions. We see nothing in the transaction indicating that the officers of the bank stepped beyond legitimate legal bounds in determining the policy to be pursued as to the loan in question.

The further contention that the contract is within the Statute of Frauds is practically disposed of in the previous discussion. The allegations are held sufficient to charge the defendants with an obligation to loan money. The contract is not brought within the Statute of Frauds by reason of the incidental effect it might have. Had the alleged agreement been performed, it is true that the obligations of the plaintiff owing to third persons would have been discharged, but this would not bring the contract within the statute. The statute is generally construed to be applicable to that situation in which the defendant promisor undertakes to pay a debt that a third person owes to the promisee and to whose obligation the defendant's promise is collateral. Furthermore, the complaint nowhere alleges the contract to be verbal, and it is elementary that when such is the case the complaint is not objectionable on demurrer.

The order appealed from is reversed and the cause remanded for further proceedings according to law.